COLLINS, Appellee,

v.

MULLINAX EAST, INC.; Ford Motor Company, Appellant.

[Cite as *Collins v. Mullinax East, Inc.,* 153 Ohio App.3d 534, 2003-Ohio-3497.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2002–L–004.

Decided June 30, 2003.

Howard S. Stern and Loren Gordon, for appellee.

Mary Arens Hale and Gina A. Beredo, for appellant.

NADER, Judge.

{¶ 1} This is an appeal taken from a judgment rendered by the Lake County Court of Common Pleas awarding appellee damages under Ohio's Nonconforming New Motor Vehicle law, R.C. 1345.71 et seq., i.e., Ohio's "Lemon Law." The question presented for review is one of first impression and inquires into the scope of a legitimate refund under the statute. To wit, the appellant asks whether a consumer is entitled to recover finance charges incurred on a home equity line of credit when that line of credit is used to purchase a new motor vehicle later determined to be a Lemon. To this question, we respond in the affirmative and, in doing so, affirm the judgment of the trial court.

{¶ 2} In September 1997, appellee, Susan Collins, purchased a 1998 Ford Expedition by trading in a vehicle and financing the balance of $25,017.51 on her home equity line of credit. In February 1998, appellee traded the 1998 Expedi-

tion, valued at $28,500, for a 1998 Mercury Mystique costing $17,125; appellee received cash back in the amount of $12,424.15, $10,830.67 of which was paid on her home equity line of credit. On June 2, 1998, appellee purchased a 1998 Ford Mustang Cobra convertible from defendant Mullinax East, Inc., for $27,048.84. To finance this purchase, appellee traded her Mercury, valued at $14,000, and the balance ($13,048.84) was borrowed on the home equity line of credit.

{¶ 3} Since the Mustang purchase, appellee has consistently paid $500 per month towards the outstanding balance on the line of credit. However, appellee has made additional purchases on the line of credit since acquiring the Mustang. As of trial, the balance on the line of credit was approximately $21,000.

{¶ 4} After repeated problems with the Mustang, appellee filed a complaint on June 2, 2000, alleging violations of Ohio's Lemon Law against defendant Mullinax East, Inc., and Ford Motor Company, appellant. On June 5, 2001, Ford confessed judgment of the amount of $27,048.84 and thereby rendered any and all claims against Mullinax East, Inc. moot.

{¶ 5} At trial, the parties stipulated that the interest on the financing was a fixed rate of 9.25 percent per annum, the principal amount financed was $27,048.84, and the longest loan amortization period available from any lender for the purchase of a new car is 66 months.

{¶ 6} Due to the turbid nature of the facts, it is important to underscore appellee's husband's testimony regarding how the various transactions were integrated: To wit, appellee's husband testified that the couple had clear title to the Mystique notwithstanding the significant balance they owed on the vehicle. As such, trading in the Mystique did not act to eliminate the outstanding balance appellee owed on the Mystique; rather, when appellee traded in the Mystique, the amount that she owed on the vehicle merged with the $13,048.84 that she had borrowed to finance the Mustang. Thus, as the parties' stipulations reflect, appellee actually used her home equity line of credit to finance the entire $27,048.84 purchase price of the Mustang even though the process implied that she borrowed only $13,048.84 to purchase the vehicle.

{¶ 7} On November 16, 2001, the lower court held a bench trial on the sole issue of damages. Ford agreed that appellee was entitled to a refund of the purchase price of $27,048.84, that appellee was entitled to her court costs, and that she is entitled to her vehicle expert inspection costs. However, Ford disputed that appellee and her husband were entitled to lost time from work or that appellee was entitled to the financing costs on a line of credit where the loan is not secured by the motor vehicle title.

{¶ 8} On December 5, 2001, the court issued its final order and awarded appellee damages in the amount of $40,341.14. In arriving at this figure, the

court underscored its calculus for determining the financing charges: Using a banker's payment and interest book, the monthly payment on a loan of $27,048.84 principal, at 9.25 percent interest, amortized over 66 months, is $527.88. This figure was multiplied by 66 months, yielding the total principal and interest over the life of the loan as $34,840.08. The trial court then subtracted the principal amount of $27,048.84, which left a balance of $7,791.24 for total interest paid over the 66 months. This figure was then divided by 66 to obtain an average monthly interest of $118.05. Finally, the court multiplied $118.05 times 42, the accumulated number of months appellee had paid from the loan's inception to the judgment, to obtain a sum of $4,958.06. By adding this amount to the full purchase price ($27,048.84), the reasonable attorney fees ($7,927.50), the vehicle inspection and report ($196.25), and the court costs ($110.49), the court arrived at the damage amount of $40,341.14.

{¶ 9} Ford now appeals from this award asserting the following assignment of error:

{¶ 10} "The trial court erred by holding that appellee's finance charges from her home equity line of credit are compensable damages under Ohio's Lemon Law."

{¶ 11} Before assessing the merits of Ford's claim, some general observations regarding Ohio's Lemon Law are necessary. The Lemon Law legislation, like all consumer protection statutes, is remedial in nature and should be liberally construed in favor of the consumer to effectuate the purpose. *Gen. Motors Acceptance Corp. v. Hollanshead* (1995), 105 Ohio App.3d 17, 22, 663 N.E.2d 663; *LaBonte v. Ford Motor Co.* (Oct. 10, 1999), 8th Dist. No. 74855, 1999 WL 809808. The purpose of the Lemon Law is to make consumers whole. *Dunaway v. Ford Motor Co.* (1998), 97 Ohio Misc.2d 3, 6, 709 N.E.2d 947.

{¶ 12} Under the law, if a vehicle is designated a Lemon, a manufacturer is required to accept the return of the vehicle and either replace it or issue a statutory refund, at the consumer's option. R.C. 1345.72(B). If the consumer does not want a replacement vehicle, then the manufacturer must refund the "full purchase price." R.C. 1345.72(B)(1). The "full purchase price" includes, inter alia, all finance charges incurred by the consumer. R.C. 1345.71(F)(1).

{¶ 13} R.C. 1345.72(D) discusses the nature of the refund process when a secured party is involved. This section serves to indicate that the rights and obligations between a consumer and the secured party shall not be affected if the consumer opts for a refund. There is no ostensible process listed for the refund of finance charges when a party finances her purchase from a source other than a secured party. Ford seizes on this omission, maintaining that because R.C. 1345.72 does not specifically detail a refund process for the recovery of finance

charges from a consumer's home equity line of credit, it is not obligated to appellee for these charges. Hence, by operation of expressio unius est exclusio alterius, the statute neither requires nor contemplates reimbursement of financial charges under such circumstances.

{¶ 14} Before we address the substance of the foregoing argument, we must note that when interpreting a statute:

{¶ 15} " '[T]he primary duty of the court is to give effect to the intention of the Legislature enacting it. Such intention is to be sought in the language employed and the apparent purpose to be subserved, and such a construction adopted which permits the statute and its various parts to be construed as a whole and give effect to the paramount object to be attained.' " *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 23, 567 N.E.2d 993, quoting *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871, paragraph four of the syllabus.

{¶ 16} The Lemon Law creates a remedy that is intended "to make the consumer whole, and to restore the purchaser to a position he or she occupied before acquiring the lemon." *Fortner v. Ford Motor Co.* (Feb. 9, 1998), 5th Dist. No. 1997CA00177, 1998 WL 172862, at * 1. This is a policy designed to protect consumers when their vehicle does not conform to the express warranty of the manufacturer, is defective, or its condition substantially impairs its use, value, or safety to the consumer. R.C. 1345.71(E). Its purpose, therefore, is to protect *any* consumer who buys a new car that is ultimately deemed a Lemon. As such, Ford's argument that the statute contemplates remuneration only of finance charges for secured transactions is contrary to the Lemon Law's remedial nature.

{¶ 17} Furthermore, although the statute speaks directly to the rights and obligations between a consumer and a secured party in the event of a refund, we fail to see how this provision acts to exclude consumers who finance their purchase without the assistance of a secured party. As just indicated, the Lemon Law has the broad, inclusive purpose of making any purchaser of a Lemon whole. By directly discussing the relationship between a consumer and a secured party, the statute does not exclude those purchasers who do not buy with the assistance of a secured party. In our view, the statute is simply acknowledging that when and if a consumer acquires her purchase money from a secured party, the secured party has some rights to the amount being reimbursed.

{¶ 18} This interpretation is consistent with both the letter and spirit of the law. With respect to the former, the statute requires the manufacturer to "forward the total sum required under division (B) of this section." R.C. 1345.72(D)(1). Division (B) mandates a refund of the "full purchase price," which includes all financing charges. R.C. 1345.71(F)(1). If the legislature intended to deny the reimbursement of financing charges to a specific category of consumers, it would have avoided the use of any comprehensive language.

{¶ 19} Moreover, as indicated above, the statute creates a remedy that is intended to make the consumer whole. *Fortner,* supra. As a consumer protection law, the Lemon Law must be simple and must have teeth in order to be effective. The law is designed for self-help without protracted litigation. Hence, to work well, the statute needs a harsh remedy at a certain time. *Royster v. Toyota Motor Sales, U.S.A., Inc.* (2001), 92 Ohio St.3d 327, 331, 750 N.E.2d 531. A reading that would exclude an entire category of consumers from total reimbursement would not only contravene the statute's policy but also punish a consumer for her incidental choice to make her purchase on unsecured credit. Consequently, Ford's construction is fundamentally inconsistent with the statute's remedial nature and hostile to its prophylactic purpose.

{¶ 20} Nevertheless, Ford attempts to convince this court of its position through recourse to public policy. Initially, Ford maintains that public policy does not support a consumer's recovery of finance charges pertaining to the vehicle in question from a home equity line of credit because it requires courts to make inexact assumptions regarding the actual finance charges. Thus, a court may award a consumer financing charges he or she never actually incurred, thereby punishing a manufacturer and creating a windfall for the consumer. We disagree. In the current case appellee had a flat rate of interest on her home equity line of credit. Thus, the finance charges were easily determined by reference to the amount paid from the inception of the loan to the date of judgment.

{¶ 21} Moreover, where the existence of damage is established, the evidence need only tend to show the basis for that computation of damages to a fair degree of probability. *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 611 N.E.2d 492. Only reasonable certainty as to the amount of damages is required, which is that degree of certainty of which the nature of the case admits. *Srail v. RJF Internatl. Corp.* (1998), 126 Ohio App.3d 689, 702, 711 N.E.2d 264. Therefore, once the existence of damages is shown, mere uncertainty as to amount will not preclude recovery.

{¶ 22} Realistically, a court will not need Archimedes's expertise to develop a rational formula to calculate finance charges and deduce, with reasonable certainty, the amount paid by a consumer. The fact that, under some circumstances, a court will not arrive at the exact amount for purposes of reimbursement is not fatal so long as the court is reasonably certain. Thus, the fact that a trial court may find it marginally difficult to arrive at the precise financing charges should not stand as a wholesale bar to the recovery when it is clear that the consumer paid finance charges as a result of purchasing a Lemon.

{¶ 23} Ford further complains that permitting a party to recover finance charges from a line of credit creates the possibility of falsely inflated finance

charges. That is, if a party purchases a vehicle on a line of credit and subsequently purchases other items on the same line, the principal balances and finance charges will be invariably commingled. As such, courts will be unable to distinguish between the finance charges engendered by the vehicle purchase and those originating from the other purchases. Although we acknowledge that a court may be forced to engage in a certain degree of meticulous calculating, this is not a sufficient basis for denying a consumer redress in the form of a complete refund of her finance charges. That is, so long as there is evidence of when the vehicle was purchased and how much it cost, finance charges can be traced backwards and mathematically determined.

{¶ 24} Further, Ford unwittingly assails its own argument by recognizing that it is relatively simple for a court to determine the finance charges incurred when a consumer enters into a vehicle loan agreement that contains a fixed interest rate. Such was exactly the arrangement in the instant case. Although the balance of appellee's home equity credit line fluctuated, the interest rate was fixed. Because the court was aware of when the purchase was made and its amount, it easily arrived at the financing charges paid by appellee. Therefore, Ford's argument in this respect is unpersuasive.

{¶ 25} Next, Ford predicts that allowing consumer's to recover financing charges when utilizing a source other than a secured transaction may subject a manufacturer to "outrageous and astronomical" reimbursement amounts. To illustrate its point, Ford provides a hypothetical where a consumer purchases a vehicle on a credit card that has 18–20 percent interest rate. Such interest, Ford asseverates, would be an excessive and unreasonable finance charge not contemplated by the drafters of the Lemon Law legislation. Ignoring Ford's failure to provide any support for its insight into the legislature's intent, we are still not persuaded by this line of argumentation.

{¶ 26} As indicated above, when attempting to ascertain whether an outcome is unreasonable under this legislation, we must look at the law's purpose. The purpose of the Lemon Law is to make *consumers* whole. As such, the fact that a manufacturer may experience some financial discomfort as a result of its Lemon is inconsequential. In fact, if the manufacturer desires to avoid the problem Ford presents in its hypothetical, it might implement its own policy of not permitting a consumer to buy a vehicle on credit. Nevertheless, the fact that a manufacturer may be forced to reimburse a consumer for high finance charges is an inadequate basis for denying appellee's redress for the full purchase price including all finance charges.

{¶ 27} Finally, Ford contends that the General Assembly has the legislative wherewithal to amend Ohio's Lemon Law to include a refund of finance charges resulting from a home equity line of credit. This argument is misplaced insofar

as it assumes what it needs to prove, viz., that the legislation requires an amendment. Specifically, by concluding that the legislature can amend the law to include the situation at issue, Ford assumes that the statute does not already afford the consumer the benefit of reimbursement for financing charges resulting from a home equity line of credit. In our view, Ford's assumption is unwarranted because the statute specifically states that the manufacturer shall refund the "full purchase price" and, accordingly, the "full purchase price" includes all finance charges. Thus, Ford's argument is ill conceived because it has failed to demonstrate that the legislation requires an amendment.

{¶ 28} For the aforementioned reasons, Ford's assignment of error has no merit. We therefore affirm the judgment of the Lake County Court of Common Pleas awarding appellee damages in the amount of $40,341.14.

Judgment affirmed.

DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.

ROBERT A. NADER, J., retired, of the Eleventh Appellate District, sitting by assignment.