**BRUNSWICK LIMITED PARTNERSHIP, Appellee,**

**v.**

**FEUDO et al., Appellants.**

[Cite as *Brunswick Ltd. Partnership v. Feudo*, 171 Ohio App.3d 369, 2007-Ohio-2163.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2006–L–151.

Decided May 4, 2007.

Michael Motylinski, for appellee.

Vincent A. Feudo and Michael E. Cicero, for appellants.

WILLIAM M. O'NEILL, Judge.

{¶ 1} This is an accelerated calendar case. Appellants, Raymond Feudo and Pauline Feudo, appeal from a judgment of the Lake County Common Pleas Court. The trial court awarded judgment for holdover rentals and other expenses in the amount of $10,069.30 as compensatory damages, together with $3,195.00 for attorney fees to appellee-lessor, Brunswick Limited Partnership. The Feudos were lessees of Brunswick's premises in Brunswick, Ohio. On review, we affirm the judgment entry of the trial court.

{¶ 2} The Feudos operated a beauty salon known as Heads Up & Smiling in the Laurel Square Shopping Center, in Brunswick, Ohio. In October 1998, they executed a five-year lease with the landlord, Brunswick. The term of the lease was November 1, 1998, through October 31, 2003. The stated monthly rental was $1,815, plus common-area maintenance charges and real estate taxes. The

Feudos were credited with $1,432.50 as their security deposit from their prior lease.

{¶ 3} Prior to the expiration of the lease, Brunswick made two attempts with the Feudos to have them sign a five-year renewal of the lease, at a stated rental of $1,900 per month, but the parties were unable to reach an agreement for a renewed lease.

{¶ 4} After the expiration of the lease, the Feudos remained in the rental premises through February 2004. During that four-month period, the Feudos paid $2,206.26 per month to Brunswick.

{¶ 5} Brunswick filed a complaint in the Lake County Common Pleas Court seeking damages in the amount of $14,764.09 from the Feudos. That court referred the matter to arbitration, and the arbitration panel determined that Brunswick was due $7,337.20, plus interest at the legal rate from March 3, 2004. Brunswick appealed the arbitration award to the common pleas court, and the court conducted a bench trial. At trial, Brunswick sought to enforce Article XXV of the lease, dealing with payments due in the event a tenant holds over his or her tenancy. That provision is as follows:

{¶ 6} "If Lessee or any party claiming under this Lease shall remain in possession of all or any part of the premises after the expiration of the term of this Lease, no tenancy or interest in the premises shall result therefrom but such holding over shall be an unlawful detainer and all such parties shall be subject to immediate eviction and removal, and Lessee shall pay upon demand to Lessor during any such period which Lessee shall hold the premises after the term has expired, as rent for said period, a sum equal to all items of additional rent provided for in this Lease plus an amount computed at the rate of double the minimum rent for such period."

{¶ 7} The trial court determined that Brunswick was owed double rent for the four months of holding over, in the amount of $14,520; additional expenses in the amount of $1,636.63; interest and delinquency charges incurred prior to November 1, 2003, in the amount of $4,170.33; and attorney fees of $3,195. Deducted from these amounts were payments made by the Feudos and the balance of their security deposit, resulting in a total award of $13,264.30.

{¶ 8} The Feudos timely appealed to this court and have raised a single assignment of error:

{¶ 9} "The trial court erred in its determination of damages by ignoring the binding precedent of *Village Station Associates v. Geauga Company* (Ohio App. 11th Dist.1992), 84 Ohio App.3d 448, 616 N.E.2d 1201, which holds that a 'hold over' clause contained in a commercial lease providing for double rent is unconscionable and unenforceable."

{¶ 10} " 'The construction and interpretation of contracts are matters of law.' " *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, quoting *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. An appellate court applies a de novo standard of review to questions of law and may interpret the language of the contract, substituting its interpretation for that of the trial court. *Children's Med. Ctr. v. Ward* (1993), 87 Ohio App.3d 504, 508, 622 N.E.2d 692. However, a reviewing court will not substitute its judgment for that of the trial court regarding findings of fact if those findings are supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.[1] The Feudos do not deny that the language of Article XXV clearly provides for double rent in case of a holdover situation. Instead, they argue that Article XXV is unconscionable and unenforceable insofar as it doubles the rent for the holdover period. Their argument has two prongs: first of all, they argue that a holdover provision that doubles the rent constitutes an illegal penalty provision; and secondly, they assert a factual argument that Brunswick's claim was devoid of evidence that it was entitled to double rent. For the reasons that follow, we disagree with the Feudos' argument on both prongs.

{¶ 11} Whether the subject provision constitutes an illegal penalty provision or a liquidated damages provision depends on the facts and circumstances of each case,[2] but the overriding legal principle applicable to this case is contained in R.C. 5321.06, which provides:

{¶ 12} "A landlord and a tenant may include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321. of the Revised Code or any other rule of law."

{¶ 13} The Feudos rely on this court's decision in *Village Station Assoc. v. Geauga Co.*[3] for their assertion that double rent is an illegal penalty that may not be enforced. Their reliance on that case to support their argument is misplaced.

{¶ 14} In *Village Station*, the tenant held over after the stated term for nine days. The holdover provision provided for double rent " *'for a period equal to the*

---

1. *Clem v. Steiner*, 11th Dist. No. 2002-P-0056, 2003-Ohio-4865, 2003 WL 22118390, at ¶ 15.

2. *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 28–29, 12 OBR 23, 465 N.E.2d 392.

3. *Village Station Assoc. v. Geauga Co.* (1992), 84 Ohio App.3d 448, 616 N.E.2d 1201.

*period of such detention.'* "[4] The holdover provision further provided:

{¶ 15} " 'Should Lessee occupy the premises after the termination of this Lease for any cause whatsoever, Lessee shall be considered a tenant at will and by sufferance of Lessor and no such occupancy shall operate as a renewal of the Lease or any part thereof, and thereafter *Lessee shall be a tenant on a month to month basis.'* "[5]

{¶ 16} The tenant in *Village Station* contended that it should be liable only for nine days of additional rent, at double the rent, whereas the landlord contended that it should receive double rent for the entire month because the tenant was on a month-to-month tenancy.

{¶ 17} This court applied R.C. 5321.06 to the facts of that case and stated:

{¶ 18} "[P]arties to a lease agreement can agree to anything they wish within the limits of the law. * * * [W]e conclude that the parties in the instant case had the right to agree that a tenant for a term of years must pay daily instead of monthly rent in the event of a month-to-month holdover situation." [6]

{¶ 19} This court then held that, if the liquidated-damages provision of the holdover provision is to be upheld, it must bear some relation to the actual damages sustained by the landlord.[7] Otherwise, the landlord's contention that it was entitled to a whole month's rent would result in an illegal penalty provision.[8] Inasmuch as the parties were free to contract, within the limits of the law, to "any term related to rent" and the landlord could not prove that it had sustained damages in excess of nine days' rental, it was limited to recovering double rent as holdover rental for nine days only.

{¶ 20} Therefore, far from outlawing a holdover provision that doubles a tenant's rent, *Village Station* accepted the legality of such a provision as a liquidated damages provision as long as it bears some relation to the landlord's actual damages. We note that the tenant in that case did not challenge the legality of charging double rent as liquidated damages in a holdover provision; it merely asserted that the landlord could not charge double rent for a period beyond the time the tenant was actually holding over. Thus, this court's decision

---

4. (Emphasis sic.)  Id. at 449, 616 N.E.2d 1201.

5. (Emphasis sic.)  Id.

6. Id. at 451, 616 N.E.2d 1201.

7. Id.

8. Id.

in *Village Station* does not support the Feudos' argument that holdover provisions that contain double-rent terms are illegal.

{¶ 21} Furthermore, the facts of this case differ markedly from *Village Station* in that (1) the Feudos do not agree that they are liable for double rent for any portion of the holdover period, and (2) Article XXV negates the notion that a month-to-month tenancy, or any other kind of tenancy, is created at the expiration of the lease. Instead, holdover tenants are referred to as persons who are unlawfully detaining the premises.

{¶ 22} In the second prong of their argument, the Feudos assert that Brunswick was unable to establish the value of the rental premises at any amount greater than $1,900 per month. To claim that Brunswick was entitled to double the rent every month of the holdover period, therefore, can only be construed to be an illegal penalty provision.

{¶ 23} With reference to this prong of their argument, we refer again to *Village Station*, in which both parties accepted that double-rent for holding over was due and owing, the only question being for what period of time.[9] The tenant in that case did not challenge the double-rent provision as an illegal penalty.[10]

{¶ 24} In addition, courts in other jurisdictions, when faced with similar facts, have upheld the validity of double- or even triple-rent provisions in commercial leases.[11] For example, the District of Columbia Court of Appeals has stated that "a double-rent provision in a lease presents no anomaly in our law,"[12] and a similar case in that same district, in upholding a triple-rent provision, stated:

{¶ 25} "[Tenant] breached the agreement when it failed to surrender possession of the demised premises. * * * There is no requirement in the leases that hold-over must be wrongful. Moreover, the Court finds the triple rent provision legitimate. Triple rent does not, without more, constitute a penalty. * * * Other jurisdictions have approved even more onerous clauses."[13]

---

9. Id. at 451–452, 616 N.E.2d 1201.

10. Id.

11. See, generally, Annotation, *Validity and Construction of Lease Provision Requiring Lessee to Pay Liquidated Sum for Failure to Vacate Premises or Surrender Possession at Expiration of Lease* (1952), 23 A.L.R.2d 1318, 1952 WL 7731.

12. *Sanchez v. Eleven Fourteen, Inc.* (App.D.C.1993), 623 A.2d 1179, 1182.

13. *Horn & Hardart Co. v. Natl. RR. Passenger Corp.* (D.D.C.1987), 659 F.Supp. 1258, 1267, citing *Johnson v. Fuller* (1983), 190 Conn. 552, 461 A.2d 988 and *Lama v. Manale* (1950), 218 La. 511, 50 So.2d 15, 17.

{¶ 26} The Georgia Court of Appeals, in upholding a double-rent provision, has stated that such a provision "is not a penalty but simply a contract term, and it does not violate public policy." [14]

{¶ 27} Thus, we conclude that a double-rent provision for a holdover tenant in commercial lease is not, without more, an illegal penalty provision.

{¶ 28} For the foregoing reasons, the Feudos' assignment of error is without merit.

{¶ 29} The judgment of the trial court is affirmed.

Judgment affirmed.

GRENDELL, J., concurs.

O'TOOLE, J., dissents.

---

14. (Citation omitted.) *Am. Net, Inc. v. U.S. Cover, Inc.* (2000), 243 Ga.App. 204, 209, 532 S.E.2d 756, 761.