**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1102n.06

Nos. 11-3984/11-4029

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Oct 25, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANDERSONS, INC., | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LAFARGE NORTH AMERICA, INC., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT, MOORE, and McKEAGUE, Circuit Judges.

**MERRITT, Circuit Judge.**  This appeal and cross-appeal raise multiple damages issues in a diversity contract dispute stemming from the defective condition in which two hundred railcars were returned from Lafarge[1] to Andersons, Inc., at the end of a ten-year lease.  The parties raise six separate issues on the appeal and cross-appeal.  Following the district court's award of $3.1 million in damages to Andersons, Lafarge argues on appeal that the court erred in determining that Andersons has standing as the real party in interest, that Andersons satisfied its burden of proof to establish damages, and that Andersons was entitled to six months of holdover rent.  Andersons cross-appeals, contending that the court erred in failing to award prejudgment interest, finding that

---

[1]Although the case caption lists the Defendant as "LaFarge," the parties write it as "Lafarge."

Andersons failed to mitigate its damages, and declining to award attorneys' fees. We **AFFIRM** the judgment of the district court in all respects.

We will first recount the relevant facts and the proceedings below and then take up the six issues presented on appeal.

Lafarge returned the two hundred open-top hopper railcars to Andersons in October 2008. The cars were used over the 10-year period to haul limestone aggregate. Although there are no photographs of the cars in 1998, evidence shows that Andersons had refurbished them shortly before the lease began and left them in "very good condition." Item 10 of the lease provided at Lafarge "shall, at its sole cost and expense, maintain the Cars in 'serviceable' condition, free of broken, damaged or missing parts, suitable for the commercial use originally intended, and meeting applicable standards as prescribed by the AAR Interchange Rules and the FRA rules and regulations." Item 7 provided that, at the termination of the lease, the parties "shall jointly inspect the Cars to determine if each Car is clean and free of commodities or residue" and complies with the aforementioned rules. Andersons had the right to holdover rent, among other things, if the cars were not delivered in the specified condition within thirty days of the lease's expiration.

Relevant to the standing issue, after Andersons initiated the lease agreement, it entered into financing deals with The Vaughn Group and National City Leasing Corp. for one hundred of the leased cars each. These transactions included options for Andersons to re-purchase the cars after ten years. Andersons could recoup the money it used to purchase the cars while the financing institutions profited by collecting the lease payments. The bill of sale for the Vaughn deal conveyed "all rights, title, and interest in and to the [cars] and all appurtenant rights relating thereto," whereas

the sale to National City expressly conveyed both the cars and the "right, title and interest in the Lease."

Shortly before the end of the lease period in 2008, Andersons exercised its purchase option in both financing agreements. U.S. Bancorp—which had assumed Vaughn's interest—reconveyed the cars to Andersons through an instrument using language identical to the original transaction. The bill of sale from the National City re-conveyance, however, did not expressly mention the lease (unlike the first sale document ten years earlier).

In late October 2008, Lafarge returned the cars to Andersons and the parties attempted to complete the joint inspection contemplated in the lease. The circumstances are not entirely clear from the record, but it appears that the Lafarge representatives acknowledged some deterioration in the cars but walked out in protest when the Andersons representative, Rick Gieryng, stated that the cars would need substantial repairs.[2] After evaluating the cars by himself, Gieryng estimated the cost to repair the cars at $8,500,076. The next evaluation came in November 2008 from Christian Barios, retained by Lafarge, who estimated the total repair cost to be $1,912,908.[3] In August 2009, a third appraiser, Jerry Charaska, provided another inspection for Andersons and concluded that the repair cost would range between $15,000 to $35,000 per car, for a total average of $5,000,000. Finally, Andrew Spurlock estimated the damages for Lafarge in 2010 at $646,118.

---

[2]A subsequent internal communication between Lafarge officials appears to confirm Lafarge's negative assessment of the cars' condition by describing them as "P.O.S.," which the drafter testified at trial is "a colloquialism which I prefer not to repeat for The Court."

[3]Although Barios consulted for Lafarge, his report was introduced at trial by Andersons over Lafarge's objection.

Meanwhile, Andersons initiated this action by bringing a complaint against Lafarge in January 2009. The district court conducted a two-day bench trial in October 2010. In a June 2011 order, the court ruled in favor of Andersons and issued a judgment for $2,924,455. *Andersons, Inc. v. LaFarge N. Am., Inc.*, No. 3:09 CV 222, 2011 WL 2357895 (N.D. Ohio June 9, 2011). This amount was reached primarily by disregarding the upper and lower estimates of Gieryng and Spurlock—found by the court to be "not credible"—and averaging the estimates from Charaska and Barios. The court also imposed holdover rent pursuant to the lease terms for one year but denied Andersons the recovery of the stipulated loss value and overdue rent as duplicative, and denied attorneys fees under the lease as unenforceable. Following a motion to amend the judgment, the court held in an August 2011 order that the holdover rent term should be reduced to six months but that the amount per car per day should be increased under the terms of the contract, imposed switch fees pursuant to the lease against Lafarge, and denied Andersons prejudgment interest, resulting in an adjusted final judgment of $3,171,427. Lafarge now appeals, and Andersons has cross-appealed.

"In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). "If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data." *Id.* "In an appeal from a judgment entered after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo." *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).

### I. Lafarge's Issues

### A. Real Party in Interest

Lafarge first contends that Andersons lacks standing to bring this suit because it is not the real party in interest to the lease. *See* Fed. R. Civ. P. 17(a)(1)("An action must be prosecuted in the name of the real party in interest."); *Shealy v. Campbell*, 485 N.E.2d 701 (Ohio 1985) (discussing real party in interest requirement under Ohio law). This is because, according to Lafarge, the 2008 repurchase options reconveyed the cars themselves but not any legal interest in the lease as a chose in action since the sale documents were silent on the matter. Under this theory, only U.S. Bancorp and National City would be able to sue Lafarge for the breach of contract, leaving Andersons stuck with the damaged cars once it decided to repurchase them. The district court rejected this argument quickly, as it should have, holding that the financing institutions "relinquished any interest in the railcars" and that Lafarge's recognition of Andersons as the leaseholder at the end of the term estops it from taking a contrary position. We review this interpretation of state law de novo. *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991)).

There is no dispute that Andersons successfully conveyed its interest in the lease to the financing institutions at the beginning of the lease term. Given that both the 1998 and 2008 Vaughn/U.S. Bancorp transactions used identical language to refer to the property being conveyed, we hold that an interest in the lease was first conveyed and then reconveyed. The transfer *to* National City expressly referred to the lease whereas the transfer *from* National City did not. However, the bill of sale did convey "all of [National City's] rights, title and interest in and to" the

cars and specified that the cars were sold "AS-IS-WHERE-IS without any covenant or warrant, express or implied, of any nature whatsoever." Further, a letter from National City to the Surface Transportation Board pursuant to the Interstate Commerce Act[4] provided "formal notification" that the cars had been "paid in full" and that National City "hereby releases all of its right, title and interest" in the cars. Despite the absence of an express reference to the lease, we conclude that these documents served to reconvey the interest in the lease back to Andersons. *Cf.* Restatement (Third) of Property (Servitudes) § 5.1 (2000) ("An appurtenant benefit or burden transferable . . . passes automatically with the property interest to which it is appurtenant.").[5]

The lease also reverted back to Andersons under a theory of equitable assignment. Equitable assignment is a form of conveyance recognized by Ohio law which is evidenced by "any words or transactions which show an intention on one side to assign and an intention on the other to receive, if there is a valuable consideration." *Langhals v. Holt Roofing Co.*, 547 N.E.2d 401, 403 (Ohio Ct. App. 1988). "Since intent is the controlling factor, it is to be ascertained from all the language used, construed in the light of the surrounding circumstances. The object to be accomplished through the assignment may, therefore, be taken into consideration, as well as the conduct of the parties." *Gen. Excavator Co. v. Judkins*, 190 N.E. 389, 391 (Ohio 1934). As the district court concluded, there can

---

[4]"A . . . lease . . . intended for a use related to interstate commerce shall be filed with the [Surface Transportation] Board in order to perfect the security interest that is the subject of such instrument. . . . When filed under this section, that document is notice to, and enforceable against, all persons." 49 U.S.C. § 11301(a).

[5]Ohio courts have relied on this treatise for other issues. *E.g. McCumbers v. Puckett*, 918 N.E.2d 1046, 1052 (Ohio Ct. App. 2009); *Walbridge v. Carroll*, 920 N.E.2d 1046, 1049-50 (Ohio Ct. App. 2009); *Kienzle v. Myers*, 853 N.E.2d 1203, 1207-08 (Ohio Ct. App. 2006).

be no doubt from the documents and conduct of all parties involved that the transactions were part of a financing plan from which National City would have no interest in *anything* once Andersons exercised its option to repurchase the cars. Thus, we conclude that Andersons is the real party in interest to enforce the lease for both sets of cars.

## B. Damages

Even though Lafarge presented evidence at trial that it was responsible under the contract for as much as $646,118 in damages, Lafarge inconsistently argues on appeal that the court should not have awarded "any" damages because (1) Andersons could not establish the amount of repair damages with the requisite degree of certainty and (2) the holdover rent provision is an unenforceable penalty which should be barred by Andersons's failure to mitigate.[6] Andersons cross-appealed the court's holdover rent determination, arguing that the court erred in finding that Andersons failed to mitigate those damages after sixth months.

**1. Repair Damages.**—The Andersons's expert credited by the court, Jerry Charaska, testified that an accurate determination of the cost to fix a particular car would require sand blasting to remove the corrosion and determine the remaining amount of metal thickness. In the absence of sand blasting, Charaska explained that he could provide an opinion with a reasonable degree of certainty only as to the average cost to fix each car but conceded on cross-examination that he could not provide an estimate for each car individually.

---

[6]A heading and the summary of argument in Lafarge's principal brief allude to an improper admission of hearsay, but this assignment of error is forfeited because the brief fails to offer any argument on that issue. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 525 n.4 (6th Cir. 2006).

According to Lafarge, Charaska's uncertainty bars relief because Ohio contract law requires proof of damages with a reasonable degree of certainty. However, as Andersons correctly observes, Ohio law provides that "once the existence of damages is shown, mere uncertainty as to amount will not preclude recovery." *Collins v. Mullinax E., Inc.*, 795 N.E.2d 68, 71-72 (Ohio Ct. App. 2003). In such cases the courts have established a broad standard: "the evidence need only tend to show the basis for that computation of damages to a fair degree of probability . . . which is that degree of certainty of which the nature of the case admits." *Id.* at 71. A review of the record makes clear that Lafarge conceded the existence of at least some damages. Charaska's conclusions were sufficient to satisfy the applicable standard for measuring the amount of damages. We also note that the court did not adopt Charaska's calculation as to damages entirely, but rather discounted it by averaging that number with the total cost estimated by Barios, a methodology challenged by neither party. Accordingly, we affirm the district court's determination as to repair costs.

**2. Holdover Rent**.—Lafarge claims that Andersons is not entitled to any holdover rent. Item 7(d) of the lease provided that any car not delivered in the appropriate condition within thirty days of the expiration of the lease period would be subject to holdover rentals at a rate of one and one-half times the pro-rata daily rate of the rental. The court found that Andersons "reasonably waited six months while attempting to work out its dispute with" Lafarge; it awarded holdover rent for that period. But after six months, the court found, "there was no reasonable expectation [Lafarge] would accede to [Andersons's] payment demand," and so Andersons had a duty to mitigate by either starting repairs or selling the cars for scrap parts. Thus, the court concluded that

Andersons's inaction barred it from recovering holdover rent indefinitely after a reasonable time to resolve the dispute had passed.

As a threshold matter, Lafarge contends that the holdover provision is an unenforceable liquidated damages clause. The Ohio Supreme Court has established as an exception to the freedom to contract that stipulated damages which constitute a "penalty" are unenforceable for public policy reasons. *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 187 (Ohio 1993). "A punitive remedy is one that subjects the breaching party to a liability disproportionate to the damage which could have been anticipated from breach of the contract." *Id.* at 188 (citation and internal quotation marks omitted). Determining whether stipulated damages are punitive is a searching inquiry that requires consideration of whether the damages would be "uncertain as to amount and difficult of proof," whether "the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties," and whether "the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Id.* (citation and internal quotation marks omitted).

Lafarge explains that the holdover award is contrary to public policy because Andersons had possession of the cars and therefore had unilateral control over how and when the cars may become usable. Thus, Andersons could "apply the holdover rent provision seemingly indefinitely." Applied indefinitely, Lafarge is correct that holdover rent would have no bearing on Andersons's actual damages. However, the court only awarded Andersons holdover rent for the six month period following the end of the lease in which Andersons reasonably could have expected to reach a

settlement.  During this time, Andersons was without use of its property and had to expend resources to seek Lafarge's compliance with the contract.  The damages were hard to quantify and were the types of losses the parties contemplated when assenting to the holdover provision.  Such damages do not rise to the level of a penalty.

On the question of whether Lafarge is correct in claiming that Andersons did not properly mitigate damages, under Ohio contract law, "mitigation is a fundamental tenet of a damage calculus." *Frenchtown Square P'ship v. Lemstone, Inc.*, 791 N.E.2d 417, 419 (Ohio 2003).  Lafarge argues that the district court erred in awarding holdover rent despite its determination that Andersons failed to satisfy its duty to mitigate by either scrapping the cars or fixing them.  The problem with this assignment of error is that the court only awarded damages for the six months in which it found Andersons had no duty to mitigate, a finding Lafarge does not challenge (or directly acknowledge).  Lafarge and the district court are in complete agreement that Andersons is not entitled to damages during the remaining time in which it should have mitigated, so this issue is without merit.

## II.  Andersons's Issues

Andersons cross-appeals on three matters, contending that the district court erred in finding that Andersons failed to mitigate its damages, and that it should have been awarded prejudgment interest and attorneys fees.

## A.  Mitigation

Andersons argues that the court erred in finding that it failed to mitigate after the initial six months.  According to Andersons, it should not have been required to scrap the cars because their long-term value was greater if left whole or to fix the cars because there was no market for them

during the time in question. Although we agree with Andersons on both points under these circumstances, we nonetheless conclude that Andersons is not entitled to additional holdover rent. Under Ohio law, an enhanced rent provision stemming from holdover is construed as liquidated damages, which may only be upheld "as long as it bears some relation" to the owner's actual damages. *Brunswick Ltd. P'ship v. Feudo*, 870 N.E.2d 804, 807 (Ohio Ct. App. 2007). Similarly, the mitigation doctrine provides that an injured party may only be placed "in as good a position" as would be the case if there had been no breach. *Frenchtown Square P'ship*, 791 N.E.2d at 419 (citation omitted). Allowing Andersons to collect holdover rent indefinitely while it maintained exclusive control over the cars after Andersons knew that Lafarge had no intention to fix them, and knew there was no real market, would probably create a windfall for Andersons and an unenforceable penalty for Lafarge. We believe the district court reached a fair decision taking into account the particular facts of the case regarding the absence of a market for the cars at the end of the lease.

## B. Prejudgment Interest

Andersons argues that the court erred in declining to award prejudgment interest. This is a debatable issue. Under Ohio law, "when money becomes due and payable upon . . . all judgments . . . for the payment of money arising out of . . . a contract . . . , the creditor is entitled to interest" at a statutory rate or as otherwise provided in the contract. Ohio Rev. Code Ann. § 1343.03(A). The Ohio law is somewhat unclear as to the interpretation of this statutory language. "[T]he trial judge has no discretion not to grant any interest award" if a plaintiff obtains a favorable judgment, *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 693 (6th Cir. 2000) (applying Ohio law),

but trial courts have "broad discretion in determining when money becomes due and payable," *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 872 N.E.2d 295, 312 (Ohio Ct. App. 2007). A trial court's determination regarding a plaintiff's entitlement to prejudgment interest on a contract is reviewed de novo. *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 569 (6th Cir. 2011) (citing *Forest Hills Local Sch. Dist. Bd. of Ed. v. Huegel*, Nos. CA2007-02-026, CA2007-02-032, 2008 WL 2102406, at *3 (Ohio Ct. App. May 19, 2008)). The date at which money is "due and payable" is a factual determination which is reviewed under an abuse of discretion standard. *Gates v. Praul*, No. 10AP–784, 2011 WL 6036397, at *12 (Ohio Ct. App. Dec. 6, 2011).

The district court concluded that, in light of the uncertainties concerning damages, Andersons was not entitled to prejudgment interest on repair costs because that money was not "due and payable" until the court ordered it. Item 30(g) of the lease provided that interest "shall accrue" for payments "not made *when due hereunder* from the date thereof." (Emphasis added). According to Andersons, payment was due when the claim accrued: the time of the return of the cars. However, the lease did not specify when repair costs from Lafarge to Andersons were "due." Rather, the lease required Lafarge to fix the cars itself "promptly" and within a "reasonable time" of return. In the absence of a more definitive point for repair costs to become "due," we cannot say that the district court abused its discretion in setting the judgment date as the starting time. *See Hutchinson v. State Auto Ins. Co.*, No. 20636, 2002 WL 121202, at *2 (Ohio Ct. App. Jan. 30, 2002) ("When the facts and contract provisions are silent on the starting date for prejudgment interest, the time when the concluding step in the process of determining the amount payable is completed provides the method to identify the starting date."). Moreover, the Ohio Supreme Court has stated that prejudgment

interest is not a penalty but rather "acts as compensation and serves ultimately to make the aggrieved party whole." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995). As the district court recognized, Andersons had not incurred repair costs before the judgment, so Andersons does not need interest on those costs to be "fully compensated." *See id.*

By contrast, holdover rent had a more definitive "due date" under the lease because it was specified to be "paid on demand" starting thirty days after the lease expiration. However, the district court concluded that Andersons is not entitled to prejudgment interest on holdover rent because Item 30(g) of the lease only allows for interest for "any payment, **other than rent**." (Emphasis added by district court). We also note on this issue that there is a discrepancy in the record. The district court's order accurately quotes Exhibit A of the complaint, which is a copy of the lease signed in April 1998, that excludes interest on rent. [R. 63, Amended Judgment Entry, at 5, PageID 1103; R.1-1, Complaint Exhibit A, at 1, PageID 5]. Yet Andersons's briefs quote the same provision as "any payment, including rent." [Second Br. 35; Fourth Br. 4-5]. Without argument or demonstration from either party as to which version of the lease controls—even though the "other than rent" provision was emphasized in bold font in the district court's opinion and served as the *only* basis for denying interest on holdover rent—we cannot conclude that the court erred.

## C. Attorneys' Fees

Finally, Andersons asserts that the court erred in not awarding it attorneys' fees. A trial court's determination regarding attorneys' fees is reviewed for abuse of discretion. *Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 265 (Ohio Ct. App. 1998). Item 25 of the lease provided:

> Lessee shall pay Lessor's costs and expenses incurred by reason of Lessee's breach or default which shall include, without limitation, . . . collecting rents and professional fees and expenses with respect to or incurred by reason of the breach or default, including legal fees and expenses for advice and legal services in any actions or proceedings which Lessor may commence or in which Lessor may appear or participate to exercise or enforce any rights or remedies or to protect or preserve any rights or interests, and in all reviews of and appeals from any such actions or proceedings.

Under Ohio law, a contractual right to attorneys' fees is generally "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009) (quoting *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 514 N.E.2d 702, 707 (Ohio 1987)).

The district court, relying on our decision in *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 426-29 (6th Cir. 2008), found the provision at issue here unenforceable because it was a "standard paragraph in the Lease and was not negotiated between the parties" and constituted a "one-way street" that only ran in favor of Andersons. In *Big Lots Stores*, we followed binding Ohio and Sixth Circuit cases that voided similar provisions, notwithstanding "some indication of a shift in the law" among Ohio courts. *Id.* Although Ohio courts remain divided, *see JPMorgan Chase Bank, NA v. Corral*, No. 10 CAE 09 0079, 2011 WL 3198270, at *14-15 (Ohio Ct. App. July 14, 2011) (reviewing cases), we find no "shift" from which to conclude that the district court abused its

discretion in voiding the provision here.[7,8]  In addition, the district court based its decision on the

following findings:

> This Court agrees with LaFarge that this was a standard paragraph in the Lease and
> was not negotiated between the parties.  Also, this provision was a "one-way street"
> that ran only in favor of Andersons.  Further, this Court finds that there was a
> legitimate dispute between the parties as to the amount of the repairs and that both
> sides have "unclean hands" in the manner the "joint inspection" was handled at the
> outset.

In balancing the equities in the case and recognizing the ambiguity of Ohio law on this subject, the

district court exercised its discretion, and we do not find its conclusion unreasonable.

For the reasons discussed above, the district court's judgment is **AFFIRMED** in all respects.

---

[7]We note that one panel of the Ohio Court of Appeals relied on our decision in *Big Lots Stores* to void a non-negotiated, attorneys'-fee provision. *See Exec. Bus. Ctrs., Inc. v. TransPacific Mfg,. Ltd.*, No. L-08-1060, 2009 WL 282383, at *8 (Ohio Ct. App. Feb. 6, 2009).

[8]Andersons argued in its reply brief that it is also entitled to attorneys' fees pursuant to Ohio Rev. Code § 1319.02 (recently transferred from § 1301.21).  This position is forfeited because Andersons sought attorneys' fees solely pursuant to the contract in the district court and in its principal brief on appeal. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (failure to present an argument to a district court generally forfeits the right to present it on appeal); *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004) (failure to raise arguments in opening memorandum or brief leads to forfeiture).