NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0745n.06
Filed: December 4, 2008

No. 07-4296

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BIG LOTS STORES, INC., d/b/a Consolidated International; CSC DISTRIBUTION, INC.; WEST COAST LIQUIDATORS, INC.; CLOSEOUT DISTRIBUTION, INC.; DURANT DC, LLC, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| LUV N' CARE, LTD; LUV N' CARE INTERNATIONAL, INC., | ) ) | SOUTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) ) | |

Before: CLAY, GILMAN, and ROGERS, Circuit Judges.

**Rogers, Circuit Judge.** In this diversity case in which Big Lots won its contract action, Big Lots appeals the denial of attorney fees. The district court interpreted Ohio law to preclude enforcement of a boilerplate contractual provision that can be read to allow Big Lots to recover attorney fees for the underlying lawsuit. Big Lots claims that the Ohio courts would enforce the provision, and that, even without the provision, Ohio law provides for attorney fees because the underlying cause of action was for "indemnity." Our court has held that the Ohio courts would not award attorney fees based on boilerplate contractual provisions in similar circumstances, and

intervening Ohio appellate cases have not changed the landscape sufficiently for us to come to a different conclusion. The district court therefore correctly resolved the attorney fees issue. The district court also correctly refused to award damages that Big Lots did not identify during discovery.

**I.**

The suit at issue here concerns 46,000 Beatrix Potter-themed "infant care products." Big Lots and Luv n' care began negotiating the sale of these products in November and December of 2003. Big Lots did not know that Luv n' care's license from the trademark holder to sell Beatrix Potter products expired at the end of 2003, or that Luv n' care did not have permission to sell the products to Big Lots at all—it could sell only to three named retailers, including Wal-Mart. Big Lots also was unaware that the license did not permit sales in Great Britain. In late December, the companies exchanged emails indicating that Big Lots would send purchase orders to Luv n' care for the Beatrix Potter products.

In January 2004, Big Lots sent Luv n' care eleven purchase orders for the products in question. These orders incorporated the terms negotiated in 2003, but also added numerous additional terms, including shipping dates and preprinted boilerplate terms and conditions. The parties did not discuss the boilerplate provisions. After Big Lots picked up each shipment, Luv n' care issued an invoice for the products received by Big Lots. These invoices also contained standard terms and conditions that were not discussed by the parties.

Big Lots resold many of the products, both retail and wholesale, without difficulty. However, it sold some of the products to a company in England, and those products ended up in toy stores in Great Britain. When the trademark holder discovered this unauthorized sale, the trademark holder ordered the British company to stop selling the products. Big Lots accepted the remaining unsold goods from the British company, and ceased selling the remaining disputed products. At that point, Big Lots had successfully sold about $78,000 worth of the unlicensed products, but had about $82,000 worth of the products remaining in its inventory.

Big Lots demanded that Luv n' care accept return of the remaining unsold products, reimburse Big Lots for costs and expenses incurred, and agree to indemnify Big Lots from any infringement actions the trademark holder might bring. Luv n' care refused. Big Lots in turn refused to pay invoices to Luv n' care, withholding about $100,000 for mostly non-Beatrix Potter products purchased from Luv n' care. The trademark holder never took further action against Big Lots.

In August 2004, Big Lots filed suit against Luv n' care in federal district court under the court's diversity jurisdiction. Big Lots filed claims for breach of contract, breach of warranty of noninfringement, and unjust enrichment. It also sought a declaratory judgment that it was entitled to indemnification from Luv n' care in the event it was "found liable for infringement to a third party." Luv n' care denied liability and counterclaimed, seeking recovery on the unpaid invoices.

Both sides conducted discovery during 2005, and moved for summary judgment in early 2006. In March 2007, the district court ruled in favor of Big Lots. The court resolved the battle-of-the-forms question by holding that the Big Lots purchase orders were offers to purchase, which Luv n' care accepted by shipping the goods. The court accordingly found that the parties created a series of eleven contracts in 2004, after Luv n' care's license to sell the products had expired. Further, the court held that Luv n' care accepted Big Lots' boilerplate terms and conditions when it accepted Big Lots' offers to purchase the Beatrix Potter products. The district court thus found effective Big Lots' contract term requiring Luv n' care to "indemnify, defend (at [Big Lots'] sole option) and hold harmless [Big Lots] from any and all liabilities, damages, costs, expenses and/or suits (whether actual or alleged), including, without limitation, reasonable attorneys' and experts' fees arising from [Luv n' care's breach]. [Luv n' care] shall have no right to limit its liabilities."[1]

The court granted summary judgment to Big Lots, holding that "[Luv n' care] shall indemnify Big Lots for any expenses incurred as a result of selling the infringed [sic] Beatrix Potter products minus any set off." Following briefing on damages, the court issued the order from which Big Lots appeals.

---

[1]The district court did not explicitly address the effect of the boilerplate terms in Luv n' care's invoices. Luv n' care does not challenge on appeal the district court's resolution of the battle-of-the-forms question, and we therefore do not consider any argument based on terms in Luv n' care's invoices.

In its order, the district court noted that Luv n' care did not contest Big Lots' claim of damages for "the cost of the unsold Beatrix Potter products remaining in its warehouses," "the loss on the sale of these Beatrix Potter products to [another company]," and "prejudgment interest." However, Luv n' care contested Big Lots' claim for attorney fees and costs under Ohio law. Luv n' care also disputed Big Lots' claim for storage costs and lost profits on the grounds that Big Lots had not disclosed these damages in discovery despite answering interrogatories from Luv n' care "specifically designed to identify the precise categories and amounts of damages that Big Lots was seeking."

The district court found that the attorney fee provision in Big Lots' boilerplate contract was unenforceable under Ohio law, relying on an Ohio appellate decision as well as on two Sixth Circuit cases. The district court considered the fact that the attorney fee provision "was not a product of specific free and understanding negotiation" to be critical in holding the fee provision unenforceable. The district court further found that Big Lots' claims to damages for storage costs and lost profits should have been, but were not, disclosed in mandatory disclosures or in response to interrogatories during discovery, and the court therefore denied these claims.

Notwithstanding Big Lots' arguments on this appeal, the district court properly resolved these questions.

**II.**

The contract provision allowing Big Lots to recover its attorney fees[2] is unenforceable under this court's interpretation of Ohio law because it was not specifically negotiated. In an unpublished 1998 opinion, this court held that Ohio law precludes contractual recovery of attorney fees without specific negotiation. *Colonel's Inc. v. Cincinnati Milacron Mktg. Co.*, Nos. 96-1243, 96-1244, 1998 WL 321061, at *5 (6th Cir. June 1, 1998). In a published 2005 opinion, we reaffirmed that conclusion. *Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781, 792 (6th Cir. 2005). While Big Lots' analysis of Ohio law does suggest that the issue might not be as simple as these opinions may have implied, Big Lots does not provide a persuasive reason to depart from these precedents.

In *Colonel's*, two companies disputed their rights under a written contract for the sale of plastic injection molding machines. 1998 WL 321061, at *1. The court considered, as one issue on appeal, whether one party could recover its attorney fees under a boilerplate term of the contract.

_____

[2]The district court and the parties appear to have assumed that the contract provision in question calls for recovery of attorney fees for a routine breach of contract, as well as for defending suits brought by third parties. However, the first clause—"indemnify, defend . . . and hold harmless"—implies that Luv n' care's duty to reimburse arises only if a third party brings suit against Big Lots. Big Lots did not include a provision that explicitly required Luv n' care to reimburse Big Lots for Big Lots' attorney fees expended in recovering damages should Luv n' care breach the contract. The actual provision must be read fairly broadly to achieve this result.

Thus, as a matter of law, the contract may not require the recovery Big Lots seeks. However, the district court and the parties have not addressed this interpretation. We thus will assume, without deciding, that the contract provision does call for recovery of attorney fees for Luv n' care's breach.

*Id.* at *4-5. This court interpreted Ohio law to prohibit such fees except in certain limited circumstances, including "if a stipulation in the parties' contract provides for such fees and was specifically contracted for by both parties." *Id.* at *4.

The *Colonel's* court relied on two Ohio Supreme Court cases—*Worth v. Aetna Casualty & Surety Co.*, 513 N.E.2d 253 (Ohio 1987), and *Nottingdale Homeowners' Assoc. v. Darby*, 514 N.E.2d 702 (Ohio 1987). After analyzing Ohio law, the court concluded that "[a]lthough *Worth* and *Nottingdale* recognize that where specifically contracted for, attorney fee provisions should be enforced, these cases do not change the general common law rule of unenforceability. Indeed, the Ohio Supreme Court expressly refused to overrule [precedents finding such provisions unenforceable] and left those cases undisturbed." *Colonel's*, 1998 WL 321061, at *5 (citations omitted).

Seven years later, this court applied Ohio law to reject contractual attorney fees again, this time in a published opinion in *Scotts*. We are bound by *Scotts* unless Ohio law has measurably changed in the meantime. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000) ("Following the doctrine of *stare decisis*, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law."). The *Scotts* case involved multiple, interrelated contract disputes between a manufacturer and a distributor of lawn and garden products. 403 F.3d at 783.

One of the issues on appeal was the district court's denial of attorney fees. The *Scotts* court dealt with this issue in one paragraph of its lengthy opinion, noting its agreement with the district court's reliance on *Colonel's*: "Although several Ohio courts have carved out an exception where the provision is specifically negotiated for, [*Colonel's*] at *5, that exception is not applicable to the facts of this case. We therefore hold that the district court did not abuse its discretion by denying Scotts's motion for attorney fees." *Id.* at 791.

The *Scotts* court did not analyze several intervening Ohio appellate decisions that arguably eroded Ohio law's hostility to contractual provisions for attorney fees. *See Broadway v. Arthur*, No. 99CA-G-12-063, 2000 WL 1275375, at *2 (Ohio Ct. App. Aug. 30, 2000) (fee provision in home-improvement contract enforced where parties were of "relatively equal bargaining power in a setting that did not involve commercial lending"); *Brzezinski v. Feuerwerker*, No. 74288, 2000 WL 1297699, at *5 (Ohio Ct. App. Sep. 14, 2000) (permitting a hearing on attorney fees under home-construction contract); *Furnier & Thomas LLP v. Bus. Info. Solutions, Inc.*, Nos. C-010780, C-010786, 2002 WL 31094472, at *2 (Ohio Ct. App. Sept. 20, 2002) (law firm bound by fee provision in a document-storage contract, where there was no indication "that the law firm did not or could not have participated in free and understanding negotiation had it chosen to do so"). Because these cases pre-date *Scotts*, we cannot rely on them to come to a conclusion that the law has changed since *Scotts*.

Decisions from three appellate courts in Ohio after *Scotts* arguably support Big Lots'

position, but, in the end, these decisions are not sufficient for us to disregard *Scotts*. The Sixth

District upheld an attorney fee provision in a contract between a bank and a merchant indemnifying

the bank for credit card fraud on the part of the merchant's employees. The court noted the absence

of "evidence of unequal bargaining power." *Saferin v. Sky Bank*, No. L-05-1091, 2006 WL 259618

*6 (Ohio Ct. App. Feb. 3, 2006). However, two months later, the Sixth District refused to enforce

an attorney fee provision where the provision in question allowed only one party to recover fees from

the other. The court reasoned that the one-sided nature made the provision a litigation-promoting

"penalty" that was unenforceable as against public policy. *K&A Cleaning, Inc. v. Materni*, No.

L-05-1293, 2006 WL 1047477, at *3 (Ohio Ct. App. Apr. 21, 2006). But the Sixth District with

minimal analysis later enforced an attorney fee provision. *Painters Supply & Equip. Co. v. Wagner*,

No. L-07-1320, 2008 WL 203576, at *3 (Ohio Ct. App. Jan. 25, 2008).

The Eighth District in *Firestone Financial Corp. v. Syal*, No. 86249, 2006 WL 242479, at

*2 (Ohio Ct. App. Feb. 2, 2006), determined that a contractual attorney fee provision in a vending

machine purchase financing agreement was facially enforceable, but remanded the case for

consideration of whether the parties had equal bargaining power and whether the contract was

entered under compulsion or duress. Similarly, the Ninth District upheld an award of attorney fees

in a commercial landlord/tenant contract dispute in *Cambridge Co., Ltd. v. Telsat, Inc.*, No. 23935,

2008 WL 649582, at *6 (Ohio Ct. App. Mar. 12, 2008).

Although these cases may be some indication of a shift in the law from the situation at the time of *Scotts*, they are not sufficient for us to depart from the *Scotts* holding. They are not that different from pre-*Scotts* Ohio appellate cases. And they do not deal with the type of battle-of-the-forms situation presented in this case. Without a clearer signal from the Ohio courts, we adhere to our holdings in *Scotts* and *Colonel's*.

Even less persuasive in this context is the somewhat circular dictum of the Ohio Supreme Court in *Reagans v. MountainHigh Coachworks, Inc.*, 881 N.E.2d 245, 254 (Ohio 2008), that parties are responsible for their own attorney fees absent "an enforceable contract," or the recognition in dictum in *Taylor Building Corp. of America v. Benfield*, 884 N.E.2d 12, 27-28 (Ohio 2008), that "in some circumstances" Ohio law permits contract-based attorney fees. Big Lots further points to an Ohio law, effective in 2000, that allows attorney fee recovery provisions in certain contracts. *See* Ohio Rev. Code § 1301.21. However, this argument, rather than illustrating a "trend" toward enforcing attorney fee provisions, could just as easily illustrate that the Ohio legislature can abrogate the common law rule should it choose to, but has chosen not to do so.

Under the applicable interpretation of Ohio law, recovery of attorney fees pursuant to a contractual provision is not permitted unless the parties specifically negotiated the contractual term so providing. Luv n' care prevails on this issue, as Luv n' care and Big Lots did not specifically negotiate the boilerplate term at issue here.

- 10 -

**III.**

Big Lots, moreover, is not entitled to attorney fees based on the mere fact that the contractual claim is for indemnification from Luv n' care. The Ohio cases that Big Lots invokes in this connection involve indemnity for litigation with third parties, but that is not the situation presented here.

Big Lots claims that Ohio law would allow it to recover its attorney fees from Luv n' care, even if the attorney fee provision in the contract is unenforceable, because the district court found that Luv n' care must indemnify Big Lots. But Big Lots only moved for a declaratory judgment that it was entitled to indemnification if it was "found liable for infringement to a third party." Big Lots has not been found liable to a third party for its sale of the products in question, nor has a third party sued Big Lots.

Big Lots asks this court to interpret Ohio law as requiring attorney fees even for actions between the indemnitor and the indemnitee. However, Big Lots cites no Ohio cases in which an indemnitee recovered its attorney fees for the costs of suing the indemnitor for a declaratory judgment without ever being sued by a third party. The cases Big Lots cites deal mainly with circumstances in which a third party sued the indemnitee before litigation between the indemnitee and indemnitor commenced. *See, e.g.*, *Allen v. Standard Oil Company*, 443 N.E.2d 497, 500 (Ohio 1982); *Libbey-Owens-Ford Co. v. Henry Gurtzweiler, Inc.*, No. L-96-103, 1997 WL 220987 (Ohio

Ct. App. Apr. 25, 1997)*; Bd. of Educ. of S. Euclid-Lyndhurst City Sch. Dist. v. Nationwide Mut. Ins. Co.*, No. 67306, 1995 WL 277060 (Ohio Ct. App. May 11, 1995). Big Lots also cites a case in which the indemnitee had to defend against an unsuccessful declaratory judgment action by an indemnitor while being sued by a third party, *Grange Mut. Cas. Co. v. Schmidt*, No. L-93-230, 1994 WL 236207 (Ohio Ct. App. May 27, 1994), and a case in which attorney fees were awarded as compensation for a wrongful breach of a settlement agreement, not as costs of the action, *Shanker v. Columbus Warehouse Ltd. P'ship*, No. 99AP-772, 2000 WL 726786 (Ohio Ct. App. June 6, 2000). None of these cases are analogous to the instant case, in which, in the absence of an imminent threat of suit, Big Lots sued to receive a declaratory judgment that it is entitled to indemnification should a third party sue.

In the absence of applicable authority, Big Lots' arguments that it should be able to recover its attorney fees to be made whole are unconvincing because Big Lots was not directly harmed by Luv n' care's failure to "defend" against suits that were never filed. Moreover, Big Lots' arguments that it should be able to recover the costs of its litigation to be made whole are arguments that Ohio's public policy is unwise, but whatever the wisdom of Ohio's adoption of the American rule regarding litigation expenses, this court must apply Ohio's law.

Ohio law thus does not permit the recovery of a party's own litigation expenses in these circumstances, notwithstanding an indemnity relationship.

- 12 -

**IV.**

The district court did not abuse its discretion in finding that Big Lots may not recover damages that it should have, but did not, disclose that it was seeking during discovery.

Big Lots now seeks recovery for lost profits and storage costs. However, during discovery, when Luv n' care served interrogatories on Big Lots that included a request to "[i]dentify and individually itemize all damages that [Big Lots was] seeking in the lawsuit," Big Lots did not include lost profits or storage costs on its list of damages sought. Even after Luv n' care asked Big Lots to supplement its response with specific damage amounts, Big Lots did not provide any information on these types of damages in its discovery responses. The district court found that Big Lots should have disclosed these damages under Rule 26 of the Federal Rules of Civil Procedure, and excluded them from consideration under Rule 37.

Fed. R. Civ. P. 26(1)(A)(iii) requires each party to provide to the other parties "a computation of each category of damages claimed by the disclosing party."[3] "A party must make its initial disclosures based on the information then reasonably available to it," and failure to investigate fully is not an excuse to fail to disclose. Fed. R. Civ. P. 26(1)(E). Parties must supplement their initial

---

[3]Although the district court released its opinion before the recent restyling, citations herein are to the current version of the Rules, as substance of the cited rules has not changed in a relevant way.

disclosures and interrogatory responses "in a timely manner." *Id.* 26(e)(1)(A). Interrogatories "must

. . . be answered separately and fully in writing under oath." *Id.* 33(b)(3). "If a party fails to provide

information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . .

to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *Id.*

37(c)(1).

"Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that

is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26

unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of*

*Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted).

In its lengthy argument as to why Luv n' care should have anticipated its damages requests

despite its failure to request them, Big Lots gives no excuse for why its violation of the rules was

substantially justified, and makes no showing that the district court abused its discretion in imposing

a routine sanction. And any irregular handling of the case at the summary judgment stage does not

excuse earlier discovery violations. Luv n' care had ample reason, after a lengthy discovery period,

to be surprised that Big Lots sought additional damages after Big Lots answered interrogatories in

a way that indicated that it was not seeking such damages.

**V.**

For the foregoing reasons, the order of the district court is affirmed.