**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0565n.06

No. 08-3055

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 13, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| DIANA L. VISTEIN, ) | |
| ) | |
| *Plaintiff-Appellant*, ) | |
| ) | |
| ) | |
| ) | **ON APPEAL FROM THE UNITED** |
| v. ) | **STATES DISTRICT COURT FOR** |
| ) | **THE NORTHERN DISTRICT** |
| ) | **OF OHIO** |
| THE AMERICAN REGISTRY ) | |
| OF RADIOLOGIC TECHNOLOGISTS, ) | |
| ) | |
| *Defendant-Appellee*. ) | |
| ) | |

Before: **McKEAGUE** and **GRIFFIN, Circuit Judges; WEBER, Senior District Judge**.[*]

**PER CURIAM.**

**I.**

Plaintiff Diana Vistein appeals the district court's order granting summary judgment in favor of defendant The American Registry of Radiologic Technologists ("ARRT") and denying Vistein's requests for declaratory and injunctive relief, which she sought following the ARRT's revocation of her certification as a radiologic technologist. This court has jurisdiction over the proceeding pursuant to 28 U.S.C. § 1291.

_____

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

## II.

The facts are set forth in the district court's decision dated September 13, 2007, which is published at 509 F.Supp.2d 666. To summarize, the ARRT is a national credentialing agency and registry of radiologic technologists. Among its functions are the promotion of education and competence in the radiologic technology profession through continuing education. The ARRT also encourages and monitors ethical practice by registered technologists through the publication and enforcement of the profession's Code of Ethics. The ARRT provides its registrants with a certificate and credential card stating the registrant has satisfied the ARRT's educational, testing and other requirements. The ARRT also grants its registrants the right to state on resumes, job applications and other documents that they have satisfied the ARRT's requirements and are registered with the ARRT.

Vistein is a radiologic technologist who was registered and certified with the ARRT almost continually from 1968 to 2003. In June 2003, her registration lapsed after either she failed to submit her Renewal Application or the ARRT failed to receive or process the application. Some time after her registration had lapsed and before June 2004, Vistein altered the date on an ARRT credential card that had previously been issued to her by changing the date from "2003" to "2004." She subsequently explained to the ARRT that she had altered the card because she wished to make "a clerk of [hers] an honorary tech" and was arranging a mock ceremony at which she would present her clerk with the card, but she altered only the date of the card because she realized that to make further alterations "just wasn't right."

In April 2004, the Ohio Department of Health ("ODH") informed Vistein that her Ohio radiologic license would expire on June 15, 2004. Vistein submitted her Renewal Application to the

ODH on or about April 21, 2004, and marked the box indicating that she was currently registered with the ARRT, she was in compliance with the ARRT's requirements, and she was submitting a copy of her current ARRT credential card. Vistein, however, apparently failed to submit a copy of her card with the Renewal Application. On May 18, 2004, the ODH sent Vistein a "Notice of Incomplete Renewal Application," informing her that she must submit to the ODH evidence of continuing education courses or a copy of her current ARRT credential card. In June 2004, Vistein submitted the credential card she had altered to the ODH to demonstrate fulfillment of the necessary continuing education requirements. Upon observing that the date on the card had been altered, the ODH contacted the ARRT to verify Vistein's registration status. The ARRT informed the ODH that Vistein's registration had lapsed and the credential card she had submitted was not valid.

On June 29, 2004, the ARRT sent Vistein a cease and desist letter informing her it had received information that she had presented an invalid document to the ODH to indicate she had been registered as a radiologic technologist with the ARRT when that was not the case. The ARRT informed Vistein that it believed her misrepresentation (a) was false, deceptive and misleading, (b) unlawfully infringed the ARRT's trade name and marks and its copyrights, (c) was a crime under federal and possibly state law, and (d) could seriously jeopardize the health and safety of members of the public. The ARRT further advised Vistein that her conduct could subject her to civil damages and criminal prosecution. The ARRT informed Vistein that its Ethics Committee would be reviewing her conduct at its next meeting. The ARRT requested that Vistein submit an explanation of her conduct within 30 days of the letter, which she did on July 12, 2004. At the time, she was employed by the Cleveland Clinic Foundation ("CCF") as Department Manager in the Department of Radiology. In order to retain her position, the CCF required that she be registered with the ARRT.

3

After receiving the cease and desist letter, Vistein informed the CCF that she was no longer registered with the ARRT. The CCF gave her the option of taking an unpaid leave until the matter was resolved, but she chose instead to resign.

Prior to her receipt of the cease and desist letter, Vistein had been in contact with a recruiter at Samaritan Regional Health System ("Samaritan"). She interviewed with Samaritan and informed the interviewer that she was resolving some credentialing issues. Samaritan offered her a position as Director of Radiology, which she accepted. It was Vistein's understanding that the position with Samaritan did not require her to be registered with the ARRT.

On or about July 27, 2004, Vistein filed an Application for Reinstatement of Registration with the ARRT. The ARRT informed her by letter dated August 6, 2004, that the application would not be processed until the Ethics Committee review process had been completed and that the $50.00 check Vistein had submitted was undated and was enclosed with its letter.

At its November 2004 meeting, the ARRT Ethics Committee concluded that Vistein had violated its Standards of Ethics, Rules One, Nineteen and Twenty, by submitting an altered ARRT credential card to the ODH. The Ethics Committee stated that it based this decision, in part, upon information that Vistein had misrepresented herself as a registered technologist to the ODH. The Ethics Committee sent Vistein a letter on November 19, 2004, explaining its conclusion and informing her that the Committee was recommending revocation of her ARRT certification. Vistein was allowed to request a hearing within 30 days from the date the letter was mailed. Vistein claims she never received the letter, but she admits she was aware an investigation was underway and that a decision was imminent. She did not attempt to discover the outcome of the Ethics Committee meeting or request a hearing.

4

In April 2005, the ARRT published in its Annual Report its finding that Vistein had been ethically sanctioned by the Ethics Committee. On April 18, 2005, Samaritan contacted the ARRT regarding Vistein's ethical sanction. In response, the ARRT sent Samaritan a letter dated April 18, 2005, in which it informed Samaritan as follows:

> Ms. Vistein's registration of certification was revoked effective November 19, 2004 for a period of three years due to misrepresentation. Ms. Vistein provided an altered ARRT credential card to the [ODH] in June 2004. Ms Vistein's [sic] has not been registered or certified with the ARRT since June 30, 2003.

Because she was unable to have the sanction lifted, Samaritan terminated Vistein's employment on September 15, 2005.

## III.

Vistein subsequently brought this action against the ARRT for (1) violation of her due process rights under the United States and Ohio Constitutions, claiming that the ARRT had violated her property interest in her continued employment and her liberty interests in her reputation and in the continuation of her chosen profession by revoking her certification without due process of law, and (2) tortious interference with her contractual and/or business relationships, claiming that the ARRT had interfered with her contractual and/or business relationships with the CCF and Samaritan. The ARRT brought various counterclaims based on Vistein's alleged improper use of its mark in securing and maintaining employment as a radiologic technologist.

Both parties filed motions seeking summary judgment on the claims of the opposing party. The United States magistrate judge issued a Report and Recommendation recommending that each party's motion for summary judgment be granted in part and denied in part. The district judge adopted the Report and Recommendation, dismissed the portion of the ARRT's counterclaims for

5

indemnification and breach of contract arising from Vistein's claim for intentional interference with contract, and allowed the case to proceed on the ARRT's remaining counterclaims. The district judge specifically found that Vistein had contractually waived and released her due process claims; the ARRT is statutorily immune from liability for Vistein's claims for money damages pursuant to O.R.C. § 2305.251; Vistein's due process and tortious interference with contract claims fail on the merits; and because Vistein is barred from asserting her due process claims, she is required to indemnify the ARRT with respect to its losses, costs, expenses, damages, judgments and attorneys fees incurred as a result of her assertion of those claims. The district court, pursuant to stipulation of the parties, subsequently (1) dismissed the ARRT's remaining counterclaims, and (2) established the amount of the ARRT's attorney fees and costs as $150,000, thereby disposing of all claims before the district court.

**IV.**

This court reviews a district court's grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" dispute is one that would permit a reasonable jury to return a verdict in favor of the nonmoving party. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). A fact is "material" only if its resolution could affect the outcome of the litigation under the applicable law. *Id*. At the summary judgment stage, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

**V.**

In its motion for summary judgment, the ARRT argued that Vistein's due process and tortious interference with contract claims are barred because she contractually waived and released those claims by signing "the renewal application." The district court held that the application operated to bar Vistein's due process claims but did not bar her tortious interference with contract claims as a party generally cannot limit its contractual liability for intentional torts under Ohio law. *See Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.,* 148 Ohio App.3d 596, 604, 774 N.E.2d 775, 781 (2002). Vistein claims that the district court committed clear error by issuing this ruling because the Renewal Application is an adhesion contract which is both procedurally and substantively unconscionable.

As a threshold matter, Vistein argues for the first time in her reply brief filed on appeal that because it is the ARRT's contention that she never submitted a 2003 Renewal Application, there is a "fundamental flaw" underlying the ARRT's argument that a valid waiver, release and indemnification agreement was in place for the 2003 time period in issue. Vistein notes that in its brief on appeal, the ARRT quotes from the waiver and indemnification language contained in the Renewal Application that she submitted on May 24, 2002, whereas she has filed suit based upon events surrounding her 2003 Renewal Application. Vistein contends that she can neither be held to have waived claims related to the ARRT's failure to renew her application in 2003 nor be held to have agreed to indemnify the ARRT for claims related to a Renewal Application for 2003 which she allegedly never submitted.

7

Vistein first raises the issue of the absence of a waiver, release and indemnification agreement for the relevant time period in her reply brief on appeal, despite the fact that she had ample opportunity to raise the issue before the district court. In the Report and Recommendation, the magistrate judge expressly stated that the ARRT was basing its waiver argument on the 2002 Renewal Application, noting that,

> The ARRT claims that Plaintiff contractually waived and released her due process and tortious interference claims when she submitted her Application for Renewal of Registration on or around May 24, 2002, in which she agreed to be legally bound by the terms and conditions set forth in the Agreement of Applicants for Renewal of Registration . . .

Vistein did not argue that the 2002 application had no relevance to her case, instead claiming only that the agreement was not enforceable because it was an unconscionable adhesion contract. Vistein did object to the magistrate judge's finding that she had not submitted her 2003 Renewal Application to the ARRT and argued that she had done so but the ARRT had failed to process it. At no point did Vistein argue, however, that this failure precluded her from waiving her claims against the ARRT. In fact, the district court noted that Vistein had failed to explain how the allegation that she had submitted her 2003 Renewal Application was material to the disposition of the issues before the court and went on the consider Vistein's objection to the magistrate judge's determination that the contract, although an adhesion contract, was not unconscionable.

An appellate court ordinarily does not consider issues not raised below. *Smoot v. United Transp. Union*, 246 F.3d 633, 648 n.7 (6th Cir. 2001) (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). "The purpose behind the waiver rule is to force the parties to marshal all of the relevant facts and issues before the district court, the tribunal authorized to make findings of fact." *Id*. (citing *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 325 (6th

8

Cir. 1999)). Vistein had ample opportunity to raise before the district court the issue of whether a waiver, release and indemnification agreement was in place during the relevant time period. By waiting until she filed her reply brief on appeal to raise the issue, she deprived both the district court and the ARRT of the opportunity to address the issue. There is no justification for Vistein's failure to present this issue to the district court. By failing to timely raise the issue, she has waived consideration of it by this court.

An examination of the waiver and release provision of the Renewal Application and the circumstances surrounding its signing discloses that the provision is not procedurally and substantively unconscionable.[1] It is undisputed that in 2002, Vistein submitted a Renewal Application which contained the following language:

> I hereby waive and release, and shall indemnify and hold harmless, the ARRT . . . from, against, and with respect to any and all claims, losses, costs, expenses, damages, and judgments (including reasonable attorney's fees) that arise or are alleged to have arisen, from, out of, with respect to, or in connection with this application, . . . the failure of the ARRT to renew the registration of a certificate previously issued to me, or the ARRT's notification of legitimately interested persons of such actions taken by the ARRT. I understand and agree that in the event of my breach of or default in any provision of this Application and Agreement in any respect whatsoever, the ARRT shall have the absolute right, in its absolute discretion, to revoke or suspend any certificate issued to me, refuse renewal of the registration of my certificate, censure me, and/or cancel my registration with the ARRT and to provide information regarding such circumstances to all legitimately interested persons without restriction.

Both the magistrate judge and the district judge interpreted this application as governing the revocation of Vistein's certification and her due process claims premised on that revocation. This was appropriate given that the 2002 Renewal Application gave the ARRT the right to revoke any

---

[1] This subsection addresses only the waiver and release provision of the Renewal Application. The indemnification provision is addressed separately in subsection "VI" below.

9

certification that had previously been issued to Vistein, to censure her, and to cancel her registration. The ARRT did not forfeit that right with respect to any previously-issued certification or registration and did not lose its protection from the waiver to which Vistein had agreed based either on Vistein's alleged failure to submit a Renewal Application for 2003 or, assuming she did submit a Renewal Application for that time period, the ARRT's failure to receive or process the application.

Turning to whether the Renewal Application is unconscionable, Vistein claims that it is an adhesion contract because the ARRT has 260,000 registrants to whom it sends a preprinted Renewal Application each year; the terms of the application are non-negotiable and the ARRT would not consider any attempt to alter those terms; virtually all employers in the field require registration with the ARRT in order to obtain employment, and certain Medicare and Medicaid reimbursement requirements state that at least one ARRT registrant must be on duty at all times in order for facilities to receive reimbursement for radiology services; Vistein herself has been virtually shut out of positions in the clinical field despite her decades of experience because of the ARRT's actions; and the alleged "take it or leave it" terms of the Renewal Application, as well as the purported "near mandatory nature of the registration to obtain employment," show that there was never a true agreement between the parties regarding the terms of the application.

Vistein further argues that the Renewal Application is procedurally unconscionable and that the district court committed clear error in determining otherwise based on its finding that she had a "reasonable opportunity" to understand it. She claims that the parties have unequal bargaining power because while the ARRT is a national organization with considerable resources, she is an individual with extremely limited resources. In addition, Vistein argues that the fact the renewal

10

form is mailed en masse to registrants with no explanation of its terms to the recipients and that she was not represented by counsel at the time she signed the Renewal Application demonstrates procedural unconscionability.

Vistein claims that in addition to being procedurally unconscionable, the Renewal Application's terms are substantively unconscionable. She argues that the language of the application enables the ARRT to "do anything it wants and that conduct, no matter how outrageous and egregious, cannot be challenged in court," and the "ARRT remains free to sue applicants for anything and everything under the language drafted by ARRT." She further claims that the agreement is unfair because it provides that should an applicant sue the ARRT and prevail, the applicant will be responsible for the ARRT's attorney's fees and any judgment awarded to the applicant against the ARRT, and any applicant who challenges the ARRT's discretion may have their certificate revoked and be censured for their action.[2]

The ARRT counters that the Renewal Application is not procedurally unconscionable because Vistein had every opportunity to read and understand its terms; she had a long-term relationship with the ARRT and had signed Renewal Applications containing the identical terms for at least the nine preceding years; and she does not claim that she failed to read or understand the application or that it is vague or ambiguous. The ARRT also challenges as unsupported by any evidence of record, apart from her own affidavit which purportedly contains inadmissible hearsay, Vistein's allegations that "virtually all employers in the field require registration with ARRT in

---

[2]Vistein makes these allegations despite conceding that the district court found she could not contract away her right to recover for intentional misconduct by the ARRT. Moreover, the district court determined that because the waiver and release does not bar intentional torts, Vistein is not required to indemnify the ARRT for "losses, costs, expenses, damages, judgments, and attorneys' fees arising from her claim of tortious interference with a business relationship." 509 F.Supp.2d at 677.

order to obtain employment," that "employers overwhelmingly make ARRT certification a condition of employment," and that ARRT registration is "near-mandatory." The ARRT notes that after Vistein resigned her position at the CCF, she obtained a position at Samaritan that did not require ARRT registration.

Unconscionability is characterized by an "absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 834, 621 N.E.2d 1294, 1299 (1993). To establish that a contract is unconscionable under Ohio law, the claimant must prove two elements: (1) procedural unconscionability, i.e., the individualized circumstances surrounding each of the parties to the contract were such that no voluntary meeting of the minds was possible, and (2) substantive unconscionability, meaning that the contract terms were unfair and unreasonable. *Id.*

In determining procedural unconscionability, the critical question is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 382, 613 N.E.2d 183, 189 (1993) (quoting *Wms. v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (C.A. D.C. 1965)). Ohio courts examine factors that bear on the relative bargaining positions of the parties to the contract, such as "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question." *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d at 1299. Courts also look at whether the

12

parties were represented by counsel, although a lack of representation is not dispositive, particularly where a party was not represented by counsel by her own choice and she was sophisticated enough to appreciate the possibility of retaining counsel. *See Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 627, 861 N.E.2d 553, 556-57 (2006).

In determining whether a contract is unconscionable, the court may take into consideration whether the contract is an adhesion contract. An adhesion contract is a "standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 363, 884 N.E.2d 12, 24 (2008) (citing *Black's Law Dictionary* 342 (8th Ed. 2004)). A contract of adhesion is not unconscionable per se. *Id.*

Whether a contract is unconscionable is a question of law to be determined by the court. *Ins. Co. of N. Am. v. Automatic Sprinkler Corp.,* 67 Ohio St.2d 91, 98, 423 N.E.2d 151, 156 (1981). "The test of unconscionability poses a very great burden." *Highway Equip. Co. v. Caterpillar, Inc.,* 908 F.2d 60, 65 (6th Cir. 1990).

The district court correctly determined that Vistein had failed to establish procedural unconscionability based on the following facts as found by the magistrate judge:

> Ms Vistein is educated and experienced; she makes no claims she failed to read or understand the waiver; she had signed the same renewal form and waiver for the previous nine years. Over the years she has had the opportunity to consult with counsel as to the import of the limitations of the liability clause, and while Ms. Vistein was not represented by counsel at the time the contract was executed, this is not dispositive.

509 F.Supp.2d at 676-677. The district court's determination was not erroneous as Vistein is an educated and experienced radiologic technician, having been employed in that profession for

13

approximately 30 years at the time she submitted the 2002 Renewal Application. Moreover, the entire contract consisted of five paragraphs, the waiver clause appeared in standard print, and the clause was not hidden in a maze of terms. There is no evidence that shows Vistein was unaware of the impact of the contract terms, that she was otherwise limited in understanding their impact, or that she was precluded from obtaining legal assistance if she needed help in understanding the impact of the contract terms. The fact that the Renewal Application was mailed en masse with no explanation of its terms carries little weight as there is no evidence to show that Vistein was unable to protect her interests in connection with the application or that she was compelled to sign it. Although Vistein alleges that she had no meaningful choice but to sign the application, she has not submitted competent evidence to support her allegation and to show that she was unable to obtain employment in her field without signing the application. In addition, for many years, Vistein received the benefits of certification and registration with the ARRT in exchange for payment of a very low fee.

As for Vistein's allegations regarding the adhesive nature of the Renewal Application, the application is properly characterized as an adhesion contract in that it is a standardized contract drafted by the ARRT and alterations in the printed terms by Vistein were not possible. Vistein has not shown, however, that she had no realistic choice but to submit the Renewal Application or that she did so against her better judgment or wishes. Thus, the adhesive nature of the application does not render it procedurally unconscionable.

Finally, the evidence does not show that the waiver clause of the Renewal Application is substantively unconscionable. Vistein's broad allegation that the waiver clause precludes her from challenging "outrageous and egregious" conduct by the ARRT does not hold water in light of the

14

district court's determination that she could not contract away her right to recover for intentional misconduct by the ARRT, a determination that the ARRT does not challenge. It was neither unfair nor unreasonable for Vistein to agree to waive and release claims against the ARRT arising from the Renewal Application and the specific categories of activities listed in the application when she was required to pay a very low fee in exchange for the benefits of renewal of her certification, which benefits she had enjoyed for many years.

Because Vistein failed to produce evidence to demonstrate as a matter of law that the waiver clause of the Renewal Application is both procedurally and substantively unconscionable, Vistein waived the right to proceed on her due process claims against the ARRT and the ARRT is entitled to summary judgment on these claims.

**VI.**

The district court determined that because the Renewal Application is not substantively unconscionable, the agreement, in addition to effectively barring Vistein's due process claims, requires her "to indemnify the ARRT with respect to its losses, costs, expenses, damages, and judgments, including reasonable attorney fees, arising from her pursuit of [these claims] in the present litigation." 509 F.Supp.2d at 694. Vistein claims that the indemnification provision is unenforceable because the Renewal Application is an unconscionable adhesion contract. Although Vistein raised this argument below, it was not until oral argument before this court that she specifically claimed that the district court erred by awarding attorney fees because Ohio law does not permit an award of attorney fees pursuant to a contractual agreement unless the fee provision is specifically negotiated. Vistein cited three cases in support of this proposition, including one case which was decided after this appeal had been briefed. *See Big Lots Stores, Inc. v. Luv N' Care,*

15

*LTD*, 302 Fed. App'x 423 (6th Cir. 2008); *Scotts Co. v. Cent. Garden & Pet Co.,* 403 F.3d 781 (6th Cir. 2005); *Colonel's Inc. v. Cincinnati Milacron Mktg. Co.,* 149 F.3d 1182 (Table), 1998 WL 321061 (6th Cir. 1998) (unpublished decision). Because an appellate court does not ordinarily consider issues not raised below, *see Smoot*, 246 F.3d at 648 n.7, and a party waives an issue on appeal "when [she] fails to present it in [her] initial briefs before this court," *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003), we must determine as a threshold matter whether Vistein waived her argument that the indemnification clause is unenforceable because the parties failed to specifically negotiate it by failing to raise this issue prior to oral argument.

We find that Vistein's failure to frame the indemnification issue precisely in terms of the analysis performed in *Big Lots*, *Scotts* and *Colonel's Inc*. prior to oral argument does not bar us from considering whether the indemnification provision regarding attorney fees is enforceable under Ohio law as set forth in those cases. Rather, Vistein adequately raised before the district court the issue of the invalidity of the provision based on the parties' failure to specifically negotiate it by arguing that the Renewal Application, including the attorney fees provision, is an adhesion contract, i.e., a standard preprinted form contract which was prepared by the ARRT and which contained nonnegotiable terms as to which she had no realistic choice. She also sufficiently presented this issue in her initial appellate brief where, in addition to arguing that the Renewal Application is an adhesion contract, she argued that the language of the agreement drafted by the ARRT unfairly vested all power and control in the ARRT and held any applicant who sued the ARRT liable for the ARRT's attorney fees. Vistein's arguments subsume the issue of whether an award of attorney fees pursuant to the boilerplate indemnification provision is invalid under Ohio law as analyzed in *Big Lots*, *Scotts*, and *Colonel's Inc*. Both the district court and this court have

16

therefore been afforded an ample opportunity to address the issue. Accordingly, we will consider whether the boilerplate fee-shifting provision of the Renewal Application is unenforceable under Ohio law on the ground that the parties did not specifically negotiate it.[3]

In the earliest of our three decisions interpreting Ohio law on this subject, *Colonel's Inc.*, 1998 WL 321061, *5, we held that because the attorney fees provision in the agreement at issue "was not the product of specific free and understanding negotiation" but instead was a preprinted clause that appeared in defendant's standard contract forms, the district court did not err when it concluded the provision was void as against Ohio public policy. In *Scotts*, 403 F.3d at 791, we followed *Colonel's Inc.* and recognized the long-standing rule in Ohio that "a stipulation by parties to a contract which permits attorney fees to be awarded as costs of collection upon default is void and against public policy," while acknowledging that several Ohio courts have carved out an exception where the parties have specifically negotiated the provision. In the recent decision handed down in *Big Lots*, 302 Fed. App'x. 423, we analyzed Ohio law and Sixth Circuit cases interpreting Ohio law and indicated that while this area of the law is not as straightforward as the opinions in *Colonel's Inc.* and *Scotts* may have implied, there was no basis for departing from these

---

[3]Even if Vistein waived this argument before the district court, waiver is "'a prudential rule, not a jurisdictional one." *United States v. Martin*, 438 F.3d 621, 627 (6th Cir. 2006) (quoting *United States v. Hayes*, 218 F.3d 615, 619 (6th Cir. 2000)). We have generally considered the following factors in determining whether to exercise our discretion to adjudicate the merits of an issue that has been waived: 1) whether the question is one of law or one that requires some factual development, 2) whether the proper resolution of the issue is clear beyond doubt, 3) whether the failure to take up the issue will result in a miscarriage of justice, and 4) the parties' right to have their issues considered by both a district judge and an appellate court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir. 2008). The issue in this case presents a pure question of law, the resolution of which is clear under *Big Lots*, *Scotts*, and *Colonel's Inc*. Failure to take up the issue would result in a miscarriage of justice, especially considering the similarity between Vistein's arguments before the district court and the argument that the Renewal Application was unenforceable because it was not specifically negotiated. Even assuming waiver then, we would exercise our discretion to reach the merits of this issue.

precedents. We concluded that Ohio law does not permit recovery of attorney fees pursuant to a contractual provision "unless the parties specifically negotiated the contract term so providing." *Id*. at 428. We held that the fee-shifting provision at issue was not enforceable as the parties had not specifically negotiated the boilerplate.[4] *Id*.

Consistent with our prior decisions in *Big Lots*, *Scotts*, and *Colonel's Inc*., we find that the indemnification provision relating to attorney fees in the Renewal Application is unenforceable under Ohio law. Although Vistein has not produced evidence to show that the Renewal Application is either procedurally or substantively unconscionable, she and the ARRT did not specifically negotiate the boilerplate indemnification provision in the Renewal Application. To the contrary, Vistein, who lacked any bargaining power, had no realistic choice regarding the terms of that provision or any other provision of the Renewal Application but was instead presented the standardized contract on a "take it or leave it" basis. The indemnification provision regarding attorney fees is therefore void as against the public policy of Ohio. The ARRT is precluded from recovering its attorney fees incurred as a result of Vistein's pursuit of her due process claims.

**VII.**

The district court held that the ARRT is immune from Vistein's claims for damages under O.R.C. § 2305.251, which provides, in pertinent part, as follows:

(A) No health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of a peer review committee of the health care entity. No individual who is a member of or works for or on behalf of a peer review committee of a health care entity shall be

---

[4]The provision required the appellees to "indemnify . . . and hold harmless [Big Lots] from any and all liabilities, damages, costs, expenses and/or suits (whether actual or alleged), including, without limitation, reasonable attorneys' and experts' fees arising from [Luv n' care's breach]." *Id*. at 425.

18

liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the peer review committee.

. . . .

(D) No person who provides information under this section without malice and in the reasonable belief that the information is warranted by the facts known to the person shall be subject to suit for civil damages as a result of providing the information.

Section 2305.25(A)(1) defines "health care entity" as used in § 2305.251 as

an entity, whether acting on its own behalf or on behalf of or in affiliation with other health care entities, that conducts as part of its regular business activities professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care.

Subsection (E)(1) defines a "peer review committee" as

. . . a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:

(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care; . . .

The district court determined that the ARRT is a health care entity as defined under §

2305.25, its Ethics Committee qualifies as a "peer review committee" under that provision, and the

conduct of the Ethics Committee in considering the evidence relating to Vistein's alleged violation

of the ARRT's Standards of Ethics falls within the scope of § 2305.251(A)'s grant of immunity

from liability. The district court further found that the Ethics Committee's consideration of

Vistein's alleged ethics violation, the revocation of her certification and the publication of the

revocation appear to fall within the scope of the functions of a peer review committee of the ARRT.

19

The district court rejected Vistein's claim that the immunity provided by § 2305.251 could not extend to her federal due process claim on the ground that the cases she cited in support of that proposition are inapposite. Finally, the court determined that Vistein had failed to produce competent evidence to raise a genuine issue of material fact as to whether the ARRT had acted with malice so as to strip it of its entitlement to immunity.

Vistein contends as an initial matter that the ARRT Ethics Committee does not qualify as a health care entity under O.R.C. § 2305.25. Vistein apparently argues that the ARRT does not meet the definition because although it has a system in place to verify professional competence, the system does not involve subjective peer review, which Vistein alleges was the legislative concern motivating the passage of § 2305.251. Rather, Vistein contends that the system simply verifies that applicants and registrants have met certain educational and testing requirements as opposed to performing the function of a peer review committee, which looks at a health care provider's professional competence and/or quality of care. Vistein further alleges that the district court's interpretation of § 2305.251 renders the statute unconstitutional because its interpretation prevents her from pursuing her federal due process claim.

The district court did not err in determining that the ARRT is immune from damages under § 2305.251 arising from its revocation of Vistein's certification and the publication of that information. The ARRT is a national credentialing organization of radiologic technicians and, as such, falls within § 2305.25(A)(1)'s definition of a health care entity. Similarly, its Ethics Committee fits the definition of a peer review committee under the statute. The Ethics Committee was clearly acting within the scope of its functions when it reviewed Vistein's conduct relating to

20

her certification and registration with the ARRT, determined to revoke her certification, and subsequently provided that information to Samaritan at its request.

The district court rejected Vistein's argument that the ARRT is nonetheless not entitled to immunity from damages because it acted with actual malice by reporting her ethics sanction. The district court found that Vistein's alteration of her ARRT credential card was conduct prohibited under the ARRT's Rules of Ethics. The district court further found that the motivation for her conduct was not a relevant consideration under the rules. Vistein claims that by communicating to others that she had violated ARRT Rule 20, the ARRT clearly communicated to third parties that she was deliberately deceitful, despite the fact that the ARRT had not made such a determination in its proceedings.

Vistein has failed to produce any evidence that the ARRT acted with actual malice by communicating to Samaritan that she had violated Rule 20. Rule 20 prohibits a certified radiologic technician from "[e]ngaging in false, fraudulent, deceptive or misleading communications to any person regarding the individual's education, training, credentials, experience or qualifications, or the status of the individual's state permit, license or registration certificate in radiologic technology or certificate of registration with ARRT." An individual need not engage in fraud or deceit in order to commit a violation of Rule 20; it is sufficient that the individual engage in false or misleading communications, which Vistein clearly did. Vistein's communications were false and misleading even if one accepts her allegations that she submitted her 2003 Renewal Application, it was immediately apparent to the ODH that she had altered her credential card, and her explanation as to why she altered the credential card is true. Accordingly, by communicating to Samaritan or to any other party that Vistein had engaged in conduct prohibited by Rule 20, the ARRT did not act

21

with actual malice, i.e., it did not make such statements "with knowledge they were false or with reckless disregard for whether they were true or false." *See Wall v. Ohio Permanente Med. Op.,* 119 Ohio App.3d 654, 666, 695 N.E.2d 1233 (1999) (citing *Jacobs,* 60 Ohio St.3d at 114-115, 573 N.E.2d at 612-14).

It is not necessary to address Vistein's claim that the Ohio statute cannot grant the ARRT immunity from damages on Vistein's federal due process claim. For the reasons stated below, Vistein cannot proceed on this claim because the ARRT is not a state actor for due process purposes.

**VIII.**

The district court held that Vistein could not succeed on the merits of her due process claims under 42 U.S.C. § 1983 and the Ohio Constitution because she could not prove that the ARRT, a private, non-profit credentialing agency, was acting under color of state law. Vistein claims that the district court erred in holding that the ARRT is not a state actor. She argues that there is a genuine issue of material fact as to whether the ARRT acted jointly with the State and she claims that the State's embrace of the ARRT's findings and actions transformed its actions into state actions with regard to the investigation into her conduct. Vistein argues that in determining otherwise, the district court ignored certain facts that are favorable to her and construed allegedly disputed material facts in favor of the ARRT. She further claims that the Report and Recommendation omitted the following material facts that presumably bear on the issue of whether the ARRT was acting under color of state law: the ARRT administers the test Ohio uses to determine who should be registered as a radiologic technologist; Ohio uses ARRT registration as a way of determining whether technologists have met their continuing education requirements; the

22

ARRT actively encourages such state reliance; and the ARRT and Ohio exchange information regarding possible disciplinary issues against technologists on a regular basis.

To proceed on a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States. Similarly, to proceed on a due process claim under state law, a plaintiff must show that a state actor committed the violation. *Vistein*, 509 F.Supp.2d at 696. The principal inquiry to be undertaken in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment to the United States Constitution is whether the party's actions may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the State for purposes of a § 1983 claim. These are (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 298 (2001) (citations omitted). The public function test requires that the private entity exercise powers that are traditionally exclusively reserved to the State, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). The state compulsion test requires that a State has "exercised such coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the State responsible for those initiatives. *Id*. Under the symbiotic relationship or nexus test, the action of

23

a private party constitutes state action when there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357-58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25 (1961). The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." *Brentwood*, 531 U.S. at 296 (citing *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966)). The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id*. at 298. The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1998).

Vistein makes numerous allegations which she claims create an issue of fact as to whether the ARRT is a state actor. She points to the fact that the ODH accepts ARRT registration as a means of confirming continuing education compliance without independent verification by the ODH; the ODH contacted the ARRT when she submitted an ARRT card that the State suspected had been altered; the State proposed to deny her license application on the grounds that she had not shown compliance with continuing education requirements and on moral grounds; the States and the ARRT eliminate duplicative efforts by sharing information about ethics violations; there is a disputed issue of fact as to whether the State delayed conducting a hearing on Vistein's state license until after the ARRT had issued a decision regarding the circumstances under which her card had been altered; and the ARRT provided evidence for use in the ODH hearing. In addition to these

allegations, the district court noted that there is relatively frequent communication between the ARRT and the ODH, they are in telephonic contact on a weekly basis, the ODH uses the ARRT credentialing test to determine radiologic licensing eligibility, and the ARRT informs the ODH about members who are under sanctions for ethics violations. The district court's findings, together with Vistein's allegations, are insufficient, however, to show that the ARRT is a state actor under any of the tests for determining whether its challenged conduct may be fairly attributable to the State for purposes of Vistein's due process claims. The allegations and findings show that the ARRT and the ODH share information and assist each other in performing various functions, but the evidence does not demonstrate that the ARRT performs functions traditionally reserved to the State, that either entity controls the actions or management of the other, or that the entities are sufficiently entwined or there is a sufficiently close nexus between the two to support a finding that the ARRT is a state actor.

## IX.

Vistein argues that the district court erred by determining that she could not recover on her tortious interference with contract claim. She contends that all of the elements of a tortious interference with contract claim are met and she did not have to establish actual malice to prevail on this claim. She further argues that even if a showing of actual malice were required, she has made such a showing by demonstrating that the ARRT reported to the CCF and Samaritan that she had engaged in unethical conduct by violating the ARRT's rules against fraud and deceit without considering her intent or motive.

The district court determined that the existence of actual malice is essential to Vistein's tortious interference with contract claim. The court apparently based its determination on the

25

magistrate judge's finding that although the factors for determining whether the ARRT's conduct was improper and therefore unjustified appeared to favor Vistein, the ARRT had demonstrated that its conduct was qualifiedly privileged and it was necessary for Vistein to demonstrate that the ARRT had acted with actual malice in order to overcome the qualified privilege.

The district court's analysis is correct. A showing of actual malice is not required in order to establish a tortious interference with contract claim under Ohio law, which is comprised of the following elements: (1) the existence of a contract or employment relationship, (2) the defendant's knowledge of the contract or employment relationship, (3) the defendant's intentional procurement of the breach of the contract or termination of the employment relationship, (4) lack of justification, and (5) resulting damages. *See Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863, syll. ¶ 2 (1995); *Doyle v. Fairfield Mach. Co., Inc.*, 120 Ohio App.3d 192, 216, 697 N.E.2d 667, 683 (1997). Clear and convincing evidence of actual malice is required, however, to overcome a defense of qualified privilege, *see Jacobs,* 60 Ohio St.3d at 114-115, 573 N.E.2d at 613, which is applicable to tortious interference with contract cases. *See Smith v. Ameriflora 1992, Inc.*, 96 Ohio App.3d 179, 187-188, 644 N.E.2d 1038, 1044 (1994). The district court correctly determined that the ARRT's publication of the information regarding plaintiff's ethics sanction to Samaritan was qualifiedly privileged because the communications "were made to an interested entity at that entity's request and were limited in scope to Samaritan's inquiry."[5] 509 F.Supp.2d at 680 (citing *Smith*, 96 Ohio App.3d at 184-85, 644 N.E.2d 1038; *Jacobs,* 60 Ohio St.3d at 113, 573

---

[5] It is unnecessary to address the existence of a qualified privilege with respect to the publication of information to the CCF. Plaintiff resigned her position with the CCF and cannot prevail on a tortious interference with contract claim arising from the termination of her employment with the CCF for this reason.

26

N.E.2d 609); *see also Hahn v. Kotten*, 43 Ohio St.2d 237, 331 N.E.2d 713 (1975) ("A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do.") The ARRT provided the limited information sought by Samaritan to Samaritan, and it was in the interest of both Samaritan and the ARRT that the information be provided. Because the ARRT's publication of the information was qualifiedly privileged, Vistein was required to show "actual malice," i.e., that the statements were made with knowledge they were false or with reckless disregard as to their truth or falsity, in order to defeat the ARRT's qualified privilege defense. *See Jacobs,* 60 Ohio St.3d at 115-16, 573 N.E.2d at 614.

Vistein failed to produce any evidence to show that the ARRT acted with actual malice. Contrary to Vistein's allegations, the ARRT did not inform Samaritan that she had acted with deliberate deceit or fraud or otherwise provide false information to Samaritan or any other party. The ARRT informed Samaritan that Vistein had provided an altered ARRT credential card to the ODH and that her registration of certification had been revoked due to misrepresentation, which was accurate. Because Vistein has failed to produce evidence of actual malice, she cannot overcome the ARRT's qualified privilege and thus cannot prevail on her tortious interference with contract claim.

## X. Conclusion

For the reasons stated above, the judgment of the district court granting summary judgment in favor of the ARRT on Vistein's due process and tortious interference with contract claims is

27

**AFFIRMED**. The judgment of the district court awarding the ARRT attorney fees is **REVERSED**. Because the order entered by the district court pursuant to the stipulation of the parties does not distinguish between the amount awarded as attorney fees and the amount awarded as costs, the case is **REMANDED** for a determination of the amount of costs to be awarded the ARRT and for entry of judgment in accordance with this opinion.